RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0006p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROBERT T. JENKINS,

       *Petitioner,*

  *v.*

UNITED STATES OF AMERICA,

       *Respondent.*

No. 03-5121

> Appeal from the United States District Court
> for the Western District of Kentucky at Bowling Green.
> Nos. 95-00003; 97-00241—Thomas B. Russell, District Judge.

Submitted: September 17, 2004

Decided and Filed: January 7, 2005

Before: SUHRHEINRICH and CLAY, Circuit Judges; NIXON, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Terry M. Cushing, Candace G. Hill, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Respondent. Robert Thomas Jenkins, Lexington, Kentucky, pro se.

---

## OPINION

---

  CLAY, Circuit Judge. Petitioner, Robert Thomas Jenkins, proceeding *pro se*, seeks review pursuant to 28 U.S.C. § 2253(a) of the two issues on which the district court granted a certificate of appealability from the district court's denial of Petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence: (1) whether Petitioner's counsel rendered ineffective assistance of counsel at sentencing and on appeal by failing to argue that the imposition of consecutive sentences in this case was improper; and (2) whether the same rendered ineffective assistance of counsel by failing to argue that Petitioner's rights were violated under the Interstate Agreement on Detainer Act, 18 U.S.C. App. 2. For the following reasons, we **AFFIRM** the order of the district court.

---

[*] The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

## BACKGROUND

The procedural background of this case begins on January 19, 1994, when a grand jury returned a twelve-count indictment against Petitioner, Robert Thomas Jenkins ("Jenkins"), charging him with multiple counts of knowingly making false statements to licensed firearms dealers in violation of 18 U.S.C. §§ 922(a)(6), and with multiple counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1). Two years later, on January 18, 1996, a jury in the United States District Court for the Western District of Kentucky found Jenkins guilty of all twelve counts in the indictment. He was sentenced to 175 months imprisonment, concurrent with a state sentence for an unrelated matter imposed in Warren Circuit Court, Bowling Green, Kentucky, and to be followed by three years of supervised release.

Jenkins filed a direct appeal with this Court. On September 16, 1996, while that appeal was pending, Jenkins filed a motion with the district court to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, alleging a violation of the Interstate Agreement on Detainers Act ("IAD"), 18 U.S.C. App. 2. The district court denied the motion as premature on October 24, 1996.

On January 23, 1998, this Court affirmed Jenkins' conviction on his direct appeal but remanded the case to the district court for specific findings on an obstruction of justice enhancement and for re-sentencing. *United States v. Jenkins*, No. 96-5804, 1998 WL 30802 (6th Cir. Jan. 23, 1998). The district court made specific factual findings and re-sentenced Jenkins to the same term of 175 months on March 16, 1998.

Meanwhile, Jenkins filed a second § 2255 petition on December 4, 1997. On February 23, 1998, he filed a petition under 28 U.S.C. § 2241 seeking immediate release from confinement and a motion to amend his § 2255 action to assert as additional grounds of relief the improper calculation of his criminal history category and the illegal imposition of consecutive sentences. He also twice moved this Court, pursuant to 28 U.S.C. § 2243(3)(A), for an order authorizing the district court to consider a second or successive § 2255 motion.

The first of these § 2243(3)(A) motions was denied on January 30, 1998, because of a failure to provide the requisite documentation; the second was denied as unnecessary on June 22, 1998. This Court noted that Jenkins did not need permission to file a second or successive § 2255 motion because his first motion before the district court was denied "simply because his direct criminal appeal was still pending," and transferred the case back to the district court for further proceedings. *In re Jenkins*, No. 97-0613 (6th Cir. June 24, 1998).

On August 27, 1998, the district court determined that it did not have jurisdiction to hear Jenkins' § 2241 petition and ordered Jenkins to clarify his § 2255 motion to state "whether he intended this pleading to be filed of record in the direct appeal of his sentence or whether he did indeed seek to amend a motion he believed was pending" in the district court. The district court further instructed "if he seeks to amend a motion allegedly pending [in the district court] he must identify the motion he purportedly is amending and explain the nature of the relief he is requesting." (Joint Appendix at 101).

Without responding to the district court's request for clarification, Jenkins appealed the order of August 1998 to this Court. On February 6, 2001, this Court found that the district court properly determined that it lacked jurisdiction to consider Jenkins' § 2241 petition, and found that because no dispositive order had yet been entered on the § 2255 motion, there was nothing to review. *United States v. Jenkins*, No.98-6287, 2001 WL 128435 (6th Cir., Feb. 6, 2001).

On May 22, 2001, the district court referred the case to a magistrate judge for hearings, findings of fact, and recommendations. The magistrate's report and recommendation was filed on May 7, 2002. Following an objection by Jenkins, the district court conducted an evidentiary hearing on the alleged IAD violations. On January 9, 2003, the district court issued a memorandum opinion adopting the magistrate's recommendations except as to Jenkins' claim that he suffered ineffective assistance of counsel when his

attorney failed to raise an alleged violation of the IAD, and denying Jenkins' petition seeking a writ of habeas corpus.

Pursuant to 28 U.S.C. § 2253(a), the district court granted Jenkins a certificate of appealability on the two issues raised in this appeal.[1]  Jenkins filed a notice of appeal to this Court on January 21, 2003.

## DISCUSSION

### I.      Standard of Review

Pursuant to 28 U.S.C. § 2255, a prisoner in custody pursuant to the sentence of a federal court may move the sentencing court to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255.

"In reviewing a district court's denial of a motion under Section 2255, we apply a clearly erroneous standard to its factual findings and review its conclusions of law *de novo."  Nichols v. United States*, 285 F.3d 445, 446 (6th Cir. 2002) (quoting *Hyatt v. United States,* 207 F.3d 831, 832 (6th Cir.2000) (citation omitted)).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show both that his lawyer's performance was deficient, and that this deficiency prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient when it falls "below an objective standard of reasonableness" as measured by "prevailing professional norms."  *Id.* at 688.  Our review of counsel's performance must be "highly deferential," and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

In establishing prejudice, a petitioner must demonstrate a "reasonable probability" that the outcome of the proceedings would have been different but for his counsel's alleged mistakes.  *Id.* at 694.  This standard does not demand that a petitioner show that the outcome more likely than not would have been different but for the deficient performance, but rather that the deficiency is "sufficient to undermine confidence in the outcome."  *Id.* at 693.

### II.     Ineffective Assistance of Counsel Claim for Failure to Argue that Imposition of Consecutive Sentences was Improper

Jenkins contends that his attorney was ineffective for failing to object to the trial court's imposition, pursuant to § 5G1.2 of the Federal Sentencing Guidelines, of consecutive sentences for his convictions for being a felon in possession of a firearm and for making false statements to a firearms dealer.  Jenkins appears to argue that the trial court was precluded from imposing consecutive sentences in this case because it was required to group Jenkins' offenses under § 3D1.2 of the Guidelines.  While we agree with Jenkins that the trial court was required to group his sentences, it does not follow that such grouping bars the imposition of consecutive sentences.

Section 3D1.2(d) of the Guidelines requires that counts be grouped "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."  Section 3D1.2(d) then goes on to specify that offenses covered by § 2K2.1 of the Guidelines "are to be grouped under this subsection."  U.S. SENTENCING

---

[1]Although Jenkins has sought twice to expand the issues certified by the district court, a panel of this Court denied those efforts on February 9, 2004.  *United States v Jenkins*, No. 03-5121 (6th Cir. Feb. 9, 2004).

GUIDELINES MANUAL § 3D1.2(d). Both of the offenses for which Jenkins was convicted, violating 18 U.S.C. §§ 922 (a)(6) and (g)(1), are covered by § 2K2.1. U.S. SENTENCING GUIDELINES MANUAL app. A. We therefore agree with Jenkins that his offenses should have been grouped under § 3D1.2(d).

Indeed, it appears that the trial court *did* apply § 3D1.2(d) in arriving at Jenkins' sentencing range under the Guidelines. The judgment issued by the trial court in this case indicates that the court adopted the guideline application set forth in the Pre-Sentence Report ("PSR").[2] The PSR, in computing Jenkins' offense level, determined that "each of the 12 counts of conviction shall be grouped together pursuant to Section 3D1.2(d)." Section 3D1.1(a)(2) instructs that after grouping offenses under § 3D1.2, a court should determine the offense level applicable to each group by applying the rules set forth in § 3D1.3. U.S. SENTENCING GUIDELINES MANUAL § 3D1.1(a)(2). Section 3D1.3(b) calls for applying the offense guideline that produces the highest offense level. U.S. SENTENCING GUIDELINES MANUAL § 3D1.3(b). The probation officer preparing the PSR did just that in determining the applicable base offense level.

Jenkins' real quarrel, then, does not appear to be with the grouping decision, as the trial court grouped his offenses in the manner Jenkins suggests is appropriate. Rather, Jenkins objects to the fact that after grouping the offenses, the district court imposed consecutive sentences. More precisely, the district court sentenced him to concurrent terms of 120 months on all counts of being a felon in possession of a firearm, to run consecutively to concurrent sentences of fifty-five months imposed on all counts of making false statements to a firearms dealer.

Jenkins' apparent argument – that the trial court erred in imposing separate, consecutive sentences on counts that had been grouped – is based on a misunderstanding of the relationship between the grouping guidelines and § 5G1.2(d), the "stacking" guideline. Section 5G1.2(d) calls for imposition of consecutive sentences when sentencing on multiple counts under certain circumstances. U.S. SENTENCING GUIDELINES MANUAL § 5G1.2(d). As the Fourth Circuit has explained, "grouping and stacking [imposing consecutive sentences] are separate concepts relevant in different stages of the sentencing process. Moreover, they are not mutually exclusive; that is, as a purely logical matter, there is no obstacle to stacking a defendant's sentences for grouped offenses." *United States v. Chase*, 296 F.3d 247, 251 (4th Cir. 2002). *See also United States v. Garcia-Torres*, 341 F.3d 61, 75 (1st Cir. 2003) ("grouping of [defendant's] two counts pursuant to § 3D1.2 does not preclude the imposition of consecutive sentences on each of them").

Rather, once the trial court has determined which counts should be grouped, pursuant to § 3D1.2, and calculated an offense level for each group, pursuant to § 3D1.3, "the Guidelines provide no further role for grouping in the sentencing process." *Garcia-Torres*, 341 F.3d at 75. The trial court then applies § 5G1.2, which governs sentencing on multiple counts of conviction. Pursuant to § 5G1.2(d), "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." U.S. SENTENCING GUIDELINES MANUAL § 5G1.2(d).

In this case, the trial court determined that Jenkins' guideline range was 140-175 months. In an unpublished case, this Court explained that under § 5G1.2, "total punishment" means that "a district court is required to sentence consecutively up to the lower limit of the applicable sentencing range," and "then has discretion to sentence consecutively up to the upper limit of the range." *United States v. Alcorn*, No. 99-6565, 2001 WL 1132681, *3. (6th Cir. Sept. 4, 2001).

Jenkins' convictions for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), carried a maximum penalty of 120 months. His convictions for making false statements to a firearms dealer, in violation of § 922(a)(6), carried a maximum penalty of sixty months. *See United States*

---

[2] The trial court did reject the PSR in one respect: it found, contrary to the recommendation of the PSR, that Jenkins was not an "armed career criminal" and therefore not subject to an enhancement under 18 U.S.C. § 924(e).

*v. Moses*, 106 F.3d 1273, n. 1 (6th Cir. 1997)("maximum authorized sentence for making false statements in connection with the purchase of a firearm is five years").[3]  Given these statutory maximum sentences, concurrent terms would have been insufficient to reach  the appropriate "total punishment" under § 5G1.2(d).  The trial court was required to impose consecutive sentences so as to reach the lower end of the guideline range, at 140 months, and had the authority to impose consecutive sentences so as to reach the higher end, at 175 months, which is what the trial court did.

Thus, the imposition of consecutive sentences in this case was proper, and defense counsel's failure to object to it cannot be deemed either to have been deficient or to have prejudiced Jenkins.  We therefore affirm the district court's denial of Jenkins' first claim of ineffective assistance of counsel.

## III.     Ineffective Assistance of Counsel Claim for Failure to Argue that Interstate Agreement on Detainers Was Violated

Jenkins also contends that his counsel was ineffective for failing to raise an alleged violation of the Interstate Agreement on Detainers ("IAD"), 18 U.S.C. App. 2.  As with his first allegation of ineffective assistance, we must first consider whether there was, in fact, an error to which Jenkins' counsel should have objected.

The IAD is a compact between forty-eight states, the Federal Government, and the District of Columbia.  *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001).  The purpose of the agreement is to establish "cooperative procedures" to "encourage the expeditious and orderly disposition" of charges outstanding in one jurisdiction against a prisoner who is "already incarcerated" in another jurisdiction.  18 U.S.C. App. 2, § 2, art. I.  The IAD facilitates the transfer of prisoners "to the receiving State for trial prior to the termination of his sentence in the sending State," and "it seeks to minimize the consequent interruption of the prisoner's ongoing prison term."  *Bozeman*, 533 U.S. at 148.

The IAD includes an "anti-shuttling provision," which provides that "[i]f trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."[4]  18 U.S.C. App. 2, § 2, art. IV(e).  The anti-shuttling provision, like all provisions of the IAD, applies only to prisoners who have "entered upon a term of imprisonment."  *United States v. Taylor*, 173 F.3d 538, 540 (6th Cir. 1999).

At the time of Jenkins' indictment on March 6, 1995, for the offenses that led to the convictions challenged in this case, he was being held by state authorities in Warren County Jail pending trial on state charges.  Consequently, federal authorities issued a detainer for Jenkins on March 7, 1995.  Pursuant to a writ of habeas corpus *ad prosequendum*, United States Marshals took Jenkins from the Warren County Jail on March 22, 1995, for his initial appearance in federal court.  This procedure was repeated for an April 4, 1995 status hearing and for an April 12, 1995 detention hearing.

Jenkins was sentenced in state court to a six-year term of imprisonment on April 24, 1995, but he remained in the Warren County Jail.  On May 15, 1995, U.S. Marshals again removed Jenkins from state custody pursuant to a writ of habeas corpus *ad prosequendum*, took him to federal court, and returned him to state custody on the same day.  This procedure was repeated on June 8, 1995.  On August 8, 1995, Kentucky authorities moved Jenkins to the Kentucky State Reformatory to serve out his state sentence.  On

---

[3]The maximum sentence for a violation of § 922(a)(6) is now ten years.  18 U.S.C. § 924(a)(2).

[4]However, § 9 of the IAD modifies this provision with respect to cases, like the present case, in which the United States is a receiving state.  In such cases, the court may dismiss the indictment, information, or complaint with or without prejudice. Section 9 further sets forth factors to be considered by the court in deciding whether to dismiss with or without prejudice.

August 21, 1995, another writ of habeas corpus *ad prosequendum* was issued for Jenkins, and four days later the U.S. Marshal Service removed him from the state reformatory and kept him in state custody until his federal sentence was imposed.

We conclude that none of these custody transfers violated the IAD. This Circuit has held that a prisoner has not entered a "term of imprisonment," and therefore the IAD is not triggered, until he has been transferred to "the state facility to which [he] is ultimately assigned, not the local facility in which he sits awaiting transfer to that facility." *Taylor*, 173 F.3d at 541.[5] *Taylor* reasoned that such a rule comported with the underlying goal of the IAD: "to prevent interference with institutional care and rehabilitation, which is not normally available at a facility or jail designed for temporary custody of prisoners." *Id.* (quoting *Runck v. State*, 497 N.W.2d 74 (N.D. 1993)).

Until Jenkins' final removal by federal officials from state custody,[6] he had never been removed from "the state facility to which [he was] ultimately assigned," the Kentucky State Reformatory. Rather, he was removed from the Warren County Jail, "the local facility" in which he remained pending his state trial and sentencing, and then, pending his transfer to the Kentucky State Reformatory.

Because the anti-shuttling provision of the IAD was never violated in this case, Jenkins cannot show that his counsel's failure to allege such a violation constituted ineffective assistance of counsel. We therefore affirm the district court's denial of relief on Jenkins' second claim of ineffective assistance of counsel.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the district court.

---

[5] An unrelated holding of *Taylor* not germane to our citation of that case was invalidated by the Supreme Court's decision in *Bozeman*.

[6] By its terms, the anti-shuttling provision of the IAD is not violated when a trial is held in the sending jurisdiction "prior to the prisoner's being returned to the original place of imprisonment." 18 U.S.C. App. 2, § 2, art. IV(e). Jenkins' removal from the Kentucky State Reformatory on August 25, 1995, therefore did not violate the IAD, as he was not returned until his federal trial had been held and his federal sentence imposed.