# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 7, 2011

## STATE OF TENNESSEE v. MICHAEL SHANE SPRINGER

**Direct Appeal from the Circuit Court of Gibson County**
No. 17764   Clayburn Peeples, Judge

**No. W2010-02153-CCA-R3-CD  - Filed February 16, 2012**

The Defendant pled guilty to two counts of rape of a child and reserved the following certified question: "Whether the Trial Court erred in failing to grant the defendant's Motion to Dismiss alleging the State violated the provisions of the Interstate Agreement on Detainers (T.C.A. 40-31-101 et seq, U.S. Code Title 18-App) and the anti-shuttling provisions therein pursuant to Alabama v. Bozeman, 5[3]3 U.S. 146 (2001)." For differing reasons, the majority of this panel affirms the Defendant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments
of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court. THOMAS T. WOODALL, J., filed a separate opinion concurring in part and dissenting in part. ALAN E. GLENN, J., filed a separate opinion concurring in part and dissenting in part.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); Tom W. Crider, District Public Defender, and Stephanie Hale, Assistant Public Defender, Trenton, Tennessee (at trial and of counsel on appeal), for the appellant, Michael Shane Springer.

Robert E. Cooper, Jr., Attorney General & Reporter; Rachel E. Willis, Senior Counsel; Garry Brown, District Attorney General; Jason C. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

In May 2007, the Grand Jury indicted Michael Shane Springer ("the Defendant") for twenty-one counts of rape of a child ("the Indictment"). On July 6, 2007, while the Defendant was in the custody of the West Tennessee Detention Facility in Mason, Tennessee

("the Detention Facility") awaiting sentencing on federal charges,[1] the Defendant filed a "Demand for Speedy Disposition" pursuant to the Interstate Agreement on Detainers Act[2] regarding the Indictment. On August 17, 2007, the Defendant was sentenced in federal court and returned to the Detention Facility. On August 27, 2007, the Gibson County Sheriff's Office issued a detainer on the Defendant to Tonya Fortanato who was "with the Federal Marshal." Fortanato received the detainer on August 28, 2007.

On August 28, 2007, the State filed a petition for writ of habeas corpus ad prosequendum alleging that the Defendant was in the custody of David Jolley, U. S. Marshal for the Western District of the State of Tennessee, and seeking the production of the Defendant in the Circuit Court of Gibson County on August 30, 2007, for his arraignment on the Indictment. The trial court granted the writ and, on August 30, 2007, two Gibson County Sheriff's deputies picked the Defendant up from the Detention Facility and transported him to Gibson County. The Defendant appeared in the Circuit Court of Gibson County on August 30, 2007, for his arraignment on the Indictment. Counsel was appointed to represent the Defendant, a plea of not guilty was submitted, and the case was set for trial on November 7, 2007, and January 15, 2008. The Gibson County Sheriff's deputies returned the Defendant to the Detention Facility after the arraignment. At some point during the fall of 2007, the Defendant was moved to the United States Penitentiary in Terra Haute, Indiana. No trial on the Indictment was held on November 7, 2007.

On January 2, 2008, defense counsel filed a motion requesting that the case be removed from the trial docket to allow sufficient time for investigation and preparation because the Defendant had been placed in federal custody in Indiana on a twenty-year sentence. The trial court granted the motion and set the Defendant's next trial date for May 12, 2008.

On March 31, 2008, the prosecution filed another petition for writ of habeas corpus ad prosequendum seeking the Defendant's appearance in court on May 12, 2008, for the purpose of hearing pro se motions. The trial court granted the writ, but the Defendant was not brought to Gibson County. The hearing was subsequently continued to July 28, 2008, and then to November 24, 2008, and then to May 28, 2009. In May 2009, the trial court set the case for hearing on September 29, 2009. On September 22, 2009, Gibson County

---

[1] The Defendant's attorney testified that he "thought" the West Tennessee Detention Facility in Mason, Tennessee, was "operated by a private contractor." We take judicial notice that Corrections Corporation of America lists the Detention Facility as one of its facilities, see http://www.cca.com/facilities/?state=TN (last visited Oct. 19, 2011), and that the only facility in Memphis listed on the Federal Bureau of Prisons' website is not the Detention Facility. See http://www.bop.gov/locations/institutions/mem/index.jsp (last visited Oct. 19, 2011).

[2] See 18 U.S.C.A. app. 2 (2000); Tenn. Code Ann. §§ 40-31-101 to -108 (2006).

Sheriff's deputies picked the Defendant up from the federal facility in Tuscon, Arizona, to which he had been transferred from the federal facility in Indiana, and returned the Defendant to Gibson County. On September 24, 2009, the trial court ordered mental evaluations of the Defendant.

In November 2009, the defense sought again to have the case removed from the trial docket and passed until May 2010. Included in the defense motion was the Defendant's written waiver of his rights to a speedy trial.[3] The Defendant subsequently filed pro se motions for new counsel and to dismiss the Indictment for violation of Article IV(c) and (e) of the Interstate Agreement on Detainers Act.[4] Defense counsel filed a second motion to dismiss on August 25, 2010, reiterating the Defendant's claims that Article IV(c) and (e) of the Agreement had been violated, and adding claims that Article III and Article IV(a) had been violated. On September 13, 2010, the trial court held an evidentiary hearing on the Defendant's motion to dismiss, during which several witnesses, including the Defendant, testified. The trial court denied the motion at the conclusion of the hearing.

On September 15, 2010, the Defendant pled guilty to two counts of rape of a child, receiving consecutive sentences of twenty-five years.[5] The judgment orders reflect that the trial court also ordered the Defendant to serve his sentences on these convictions consecutively to a sentence imposed by the United States District Court for the Western District of Tennessee in Case Number 06-MJ229-V.[6] In conjunction with entering his plea of guilt to the two counts of rape of a child, the Defendant reserved the following certified question of law for disposition by this Court:

> Whether the Trial Court erred in failing to grant the defendant's Motion to Dismiss alleging the State violated the provisions of the Interstate Agreement on Detainers (T.C.A. 40-31-101 et seq, U.S. Code Title 18-App)

---

[3] The Defendant's signature was included in the motion with specific reference to the waiver.

[4] The record contains no ruling or order on the Defendant's motion for new counsel. The record reflects, however, that the same lawyer appointed to represent the Defendant at his arraignment continued to represent him through his guilty plea to charges in the Indictment.

[5] The remaining counts of the Indictment were dismissed.

[6] The record does not contain a copy of the judgment entered in Case Number 06-MJ229-V. The record does, however, contain a copy of a document titled "Redacted Judgment in a Criminal Case" regarding United States v. Michael Shane Springer, No. 2:06CR20385-01-D, in the United States District Court for the Western District of Tennessee, Memphis Division, reflecting that the Defendant was sentenced on August 17, 2007, to two counts of Coercion of a Minor to Engage in Sexually Explicit Conduct for the Purpose of Producing Visual Depictions, Aiding and Abetting and one count of Transportation in Interstate Commerce Visual Depictions of a Minor Engaged in Sexually Explicit Conduct, Aiding and Abetting.

and the anti-shuttling provisions therein pursuant to <u>Alabama v. Bozeman</u>, 5[3]3 U.S. 146 (2001).

<h1 style="text-align:center"><u>Analysis</u></h1>

The certified question in this case involves the Interstate Agreement on Detainers, codified at 18 United States Code Appendix 2, and adopted by Tennessee pursuant to the Interstate Compact on Detainers. <u>See</u> Tenn. Code Ann. §§ 40-31-101 to -108 (2006) ("the IAD"). The federal government is also a participating "state" in the IAD. <u>See</u> <u>Alabama v. Bozeman</u>, 533 U.S. 146, 148 (2001); Tenn. Code Ann. § 40-31-101 Art. II(c). The IAD addresses the procedure to be followed where one participating state places a detainer on a person who is in the custody of another participating state.[7] The IAD's purpose "is to provide cooperative state procedures for the expeditious and orderly disposition of the charges underlying such detainers." <u>Dillon v. State</u>, 844 S.W.2d 139, 141 (Tenn. 1992). Under the IAD, the state with custody of the person is the "sending" state, and the state issuing the detainer is the "receiving" state. Tenn. Code Ann. § 40-31-101 Art. II(a), (b).

Although Tennessee's participation in the IAD is pursuant to state law, we recognize that the IAD's provisions should be construed in accordance with the federal courts' interpretations. As the United States Supreme Court has opined, "where Congress has authorized the States to enter into a cooperative agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, the consent of Congress transforms the States' agreement into federal law under the Compact Clause." <u>Cuyler v. Adams</u>, 449 U.S. 433, 440 (1981). Accordingly, the IAD "is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law." <u>Id.</u> at 442. <u>See also</u> <u>Carchman v. Nash</u>, 473 U.S. 716, 719 (1985) (recognizing that "[t]he Interstate Agreement on Detainers (Agreement) is a compact among 48 States, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States . . . drafted in 1956 by the Council of State Governments and . . . is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction") (citing <u>Cuyler</u>, 449 U.S. at 438-442); <u>State v. Garmon</u>, 972 S.W.2d 706, 711 (Tenn. Crim. App. 1998).

---

[7] The United States Supreme Court has explained that "[a] detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." <u>Carchman v. Nash</u>, 473 U.S. 716, 719 (1985).

When a receiving state files a detainer, Article III of the IAD allows the person in the sending state to initiate the final disposition of the charges pending against him or her in the receiving state:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the person shall be brought to trial within one hundred eighty (180) days after having caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the person's imprisonment and request for a final disposition to be made of the indictment, information or complaint; . . . The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good and honor time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

Tenn. Code Ann. § 40-31-101 Art. III(a). Compliance with Article III triggers an "anti-shuttling" provision:

> If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Id. at Art. III(d).

Article IV of the IAD gives the receiving state the right to initiate resolution of the pending charges by obtaining temporary custody of the person: "The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom the appropriate officer has lodged a detainer and who is serving a term of imprisonment in any party state made available . . . ." Id. at Art. IV(a). In such event, trial on the pending charges in the receiving state "shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state . . . ." Id. at Art. IV(c). Moreover, the trial court in the receiving state shall dismiss the pending charges if trial is not had thereon "prior to the prisoner's being returned to the original place of imprisonment . . . ." Id. at Art. IV(e). Because the Defendant has alleged violations of

the anti-shuttling provisions in both Articles III and IV, we must first determine which, if either, Article applies in this matter.

*Article III*

Preliminarily, we hold that the Defendant has failed to invoke the protections offered pursuant to Article III. First, the only pleading contained in the record before us submitted by the Defendant in an attempt to trigger Article III is the document titled "Demand for Speedy Disposition" signed by the Defendant on June 29, 2007, and filed with the Gibson County Circuit Court on July 6, 2007. Contrary to the explicit requirements of Article III(a), this request is not accompanied by a certificate from the appropriate official setting out "the term of commitment under which the prisoner is being held," etc. Tenn. Code Ann. § 40-31-101 Art. III(a). Of course, the Defendant could not provide this certificate because he had not been sentenced as of June 29, 2007. Indeed, the Defendant was not sentenced until several weeks later on August 17, 2007.

The formal requirements of Article III(a) must be strictly complied with in order to entitle a defendant to its protections. See United States v. Smith, 696 F.Supp. 1381, 1383 (D. Ore. 1988); see also State v. Grizzell, 584 S.W.2d 678, 684 (Tenn. Crim. App. 1979) (holding that, where prisoner did not comply with notification and certificate requirements of Article III(a) and (b), he was not entitled to the 180 day time limitation). Moreover, it is the prisoner's burden to establish that he or she has complied with the notice requirements set forth in Article III(a). United States v. Moline, 833 F.2d 190, 192 (9th Cir. 1987); see also Grizzell, 584 S.W.2d at 685. The Defendant's attempt to trigger the protection of Article III's anti-shuttling provision was fatally deficient. Accordingly, the trial court committed no error in denying the Defendant's motion to dismiss on this basis.

*Article IV*

With respect to Article IV, the record reflects that Gibson County filed a detainer on the Defendant on August 28, 2007, while he was in the custody of the federal government and after the Defendant had been sentenced in federal court on federal charges on August 17, 2007. Issuance of the detainer triggered application of the IAD. See United States v. Mauro, 436 U.S. 340, 343 (1978) (stating that "the provisions of the [IAD] are triggered only when a 'detainer' is filed with the custodial (sending) State by another State (receiving) having untried charges pending against the prisoner"). The Defendant subsequently was brought to Gibson County for arraignment on the Indictment and then returned to the Detention Facility before final disposition of the pending charges. The Defendant claims that this action

violated the anti-shuttling provision of Article IV, requiring the trial court to dismiss the Indictment.[8]  This author disagrees.

The Defendant's argument succeeds only if he was "serving a term of imprisonment" at the time he was brought to Gibson County and then returned to the Detention Facility.  See Tenn. Code Ann. § 40-31-101 Art. IV(a).  This author holds that he was not.  The United States Court of Appeals for the Sixth Circuit has determined that Article IV's anti-shuttling provision "is not triggered" until a prisoner "has been transferred to 'the state facility to which [he] is ultimately assigned, not the local facility in which he sits awaiting transfer to that facility.'"  Jenkins v. United States, 394 F.3d 407, 413 (6th Cir. 2005) (quoting United States v. Taylor, 173 F.3d 538, 541 (6th Cir. 1999), abrogated in part by Bozeman, 533 U.S. at 153-56).[9]  In this case, the record indicates that the Defendant was at a local, privately owned facility at the time he was brought to Gibson County for his arraignment and then returned, and was not transferred to a federal prison (the applicable "state facility") for service of his sentence until months later.  Accordingly, the Defendant was not serving his "term of imprisonment" at the time he was transferred to Gibson County and then transferred back to the Detention Facility in August 2007.  Thus, this movement of the Defendant did not trigger Article IV's anti-shuttling provision.[10]

This author acknowledges that this Court previously has held that a defendant who has been convicted and sentenced in the sending state may trigger the speedy trial provisions of Article III by filing the requisite notice demanding final disposition of charges in the receiving state, even while he is being held in a local facility pending transfer to prison.  See State v. Lock, 839 S.W.2d 436, 444 (Tenn. Crim. App. 1992) (holding that the prisoner's physical location did not control his ability to trigger the 180 speedy trial provisions of Article III).  Moreover, in Lock, this Court made the broad statement that "[t]he physical location of the prisoner should not control the I[A]D's application."  Id.  Nevertheless, this

---

[8] Although the Defendant was temporarily housed in Tennessee on his federal convictions, he was considered to be in the custody of another state under the IAD.  See United States v. Bryant, 612 F.2d 806, 810 (4th Cir. 1979); State v. Lock, 839 S.W.2d 436, 445 (Tenn. Crim. App. 1992).

[9] In Taylor, the Court noted that "[t]here is sharp disagreement among courts as to whether the IAD is triggered when a detainer is lodged against a convicted and sentenced prisoner who is being held in temporary custody pending a transfer to his permanent incarceration."  173 F.3d at 541.  See, e.g. Runck v. State, 497 N.W.2d 74, 81 (N.D. 1993), and cases cited therein.  The United States Supreme Court has not yet resolved this disagreement.

[10] We recognize that authority from the Sixth Circuit is not binding on this Court and may not be used to overrule prior reported opinions of this Court.  Indeed, we are bound to follow only the United States Supreme Court's rulings modifying or reversing a prior reported decision of this Court.  See State v. McKay, 680 S.W.2d 447, 450 (Tenn. 1984), cert. denied, 470 U.S. 1034 (1985); State v. Green, 995 S.W.2d 591, 600.  This author, however, finds the Sixth Circuit authority persuasive in this case.

author declines to extend the holding of Lock, a case involving only the speedy trial provisions of Article III, to Article IV's anti-shuttling provision.[11]

First, this Court's opinion in Lock preceded the Sixth Circuit Court's decisions in Jenkins and Taylor which, unlike Lock, deal specifically with the anti-shuttling provisions of the IAD. The anti-shuttling provisions are never even mentioned in the Lock opinion. Second, the Lock court recognized that a defendant's place of custody is irrelevant to his or her desire to resolve quickly the charges pending in a receiving state. Upon close examination, this author holds, however, that a defendant's place of custody *is* relevant to the anti-shuttling provisions. Indeed, the very purpose of the anti-shuttling provisions is to prevent interruptions to a defendant's course of rehabilitation. See Tenn. Code Ann. § 40-31-101 Art. I (policy underlying the IAD is to reduce the "uncertainties which obstruct programs of prisoner treatment and rehabilitation" that arise from "detainers based on untried indictments, informations or complaints"); Bozeman, 533 U.S. at 148 (explaining that the IAD "seeks to minimize the . . . interruption of the prisoner's ongoing prison term"). This author agrees with the United States Court of Appeals for the Sixth Circuit that,

> the [IAD] is only concerned that a sentenced prisoner who has entered into the life of the institution to which he has been committed for a term of imprisonment not have programs of treatment and rehabilitation obstructed by numerous absences in connection with successive proceedings related to pending charges in another jurisdiction.

United States v. Roberts, 548 F.2d 665, 670-71 (6th Cir. 1977). Additionally, "while there may be an occasional case in which a defendant awaiting transfer is involved in rehabilitative programs offered at the local facility, such rehabilitation efforts themselves ultimately would be disrupted by that defendant's transfer to his permanent correctional residence." Taylor, 173 F.3d at 541. Accordingly, the policy underlying the IAD's anti-shuttling provisions, arguably as opposed to the policy behind the speedy trial provisions, is not at risk where the defendant is in temporary custody in the sending state.

In sum, this author is persuaded that Jenkins and Taylor set forth the correct interpretation of the IAD's anti-shuttling provisions, provisions not considered in Lock and beyond the actual holding of Lock. Therefore, this author holds that, because the Defendant had not yet been transferred to the federal facility to which he was assigned at the time he

---

[11] Judge Woodall's separate opinion states that this author's opinion "in effect, overrule[s] the holding in this Court's opinion in Lock." That is not the case. Lock remains controlling authority on cases involving the speedy trial provisions of Article III of the IAD. This author's holding in this case addresses only the anti-shuttling provisions of Article IV of the IAD. Not only did Lock not involve any anti-shuttling issue under Article IV, it involved no claim of any kind under Article IV.

was transported from and then returned to the Detention Facility, the anti-shuttling provision of Article IV of the IAD was not triggered. Accordingly, the trial court was not required to dismiss the Indictment with prejudice and did not err in denying the Defendant's motion to dismiss on this basis.

Contrary to the Defendant's reliance upon Bozeman, Bozeman provides him no relief. In Bozeman, the defendant "was serving a sentence of imprisonment for a federal drug crime *in federal prison*" at the time an Alabama prosecutor sought and obtained his temporary custody pursuant to Article IV of the IAD in order to arraign the defendant on Alabama charges. Bozeman, 533 U.S. at 151 (emphasis added). After his arraignment in Alabama, the defendant was returned to federal prison. The defendant was returned again to Alabama for his trial on the Alabama charges about one month later. The United States Supreme Court held that the defendant's return to the federal prison prior to his trial on the Alabama charges violated Article IV's anti-shuttling provision, requiring that his Alabama charges be dismissed with prejudice. Id. at 149.

As set forth above, the Defendant had not been placed in the federal prison to which he ultimately was assigned at the time he was removed for his arraignment on the Indictment. Instead, he was picked up and then returned to federal custody in a local, temporary, privately owned detention facility. Therefore, Bozeman is distinguishable from this case and does not control its outcome.

*Other Arguments*

The Defendant also argues in his brief to this Court that the speedy trial provisions of Articles III and IV were violated and that the sending state did not observe the thirty-day period between the date on which it received Gibson County's request for the Defendant's custody and the date on which the Defendant's custody was delivered to Gibson County, as set forth in subsection (a) of Article IV. We hold that these issues are not within the scope of the certified question, which refers specifically only to the IAD's anti-shuttling provision. As our Supreme Court has emphasized, "[n]o issue beyond the scope of the certified question will be considered." State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). See also State v. Day, 263 S.W.3d 891, 899-900 (Tenn. 2008) (limiting its consideration to the "narrow issue" presented explicitly in the certified question and emphasizing "[o]nce again . . . the importance of clearly identifying the scope and limits of an issue intended to be preserved by a certified question"). Indeed, further support for this narrow interpretation comes from the Defendant's specific reference to and reliance upon Bozeman. Bozeman involved only

a claim under the anti-shuttling provision of Article IV of the IAD.  Accordingly, we do not consider these claims of error.[12]

## **Conclusion**

This author holds that the trial court committed no error in refusing to grant the Defendant's motion to dismiss on the basis that the IAD's anti-shuttling provisions were violated.  Judge Glenn holds that the certified question fails to confer jurisdiction on this Court and that this appeal must therefore be dismissed.  Consequently, the judgment of the trial court is affirmed.

_____
JEFFREY S. BIVINS, JUDGE

---

[12] One might argue that the three separate opinions in this case demonstrate that this case would provide the Supreme Court an opportunity not only to resolve outstanding issues involving the IAD, but also to review the stringent procedural requirements a defendant must satisfy to obtain review of a certified question.