**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 14a0389n.06**

**No. 13-1803**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 28, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| SAMUEL JOHN PEGO, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: GUY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Samuel Pego appeals his convictions and 780-month sentence for assaulting his domestic partner on federal territory and subsequently engaging in witness tampering. Because Pego has not established any legal error underlying his convictions or sentence, we affirm the district court's judgment.

I.

By July 2012, Samuel Pego, a Native American living on a reservation in Mount Pleasant, Michigan, had been in an intimate relationship with Katherine Osawabine for almost two years. On July 12, Pego accused Osawabine of serving as a confidential informant against him. Osawabine testified at Pego's ensuing criminal trial that Pego repeatedly beat her over the subsequent three-day period—from July 12 through July 14—striking her in the face with a metal fireplace poker, kicking her, punching her, beating her with a belt buckle, and at one point

confining her in a spare bedroom while standing in the doorway with a knife. Osawabine sustained serious injuries from the repeated assaults, ultimately requiring reconstructive surgery for multiple facial fractures.

Osawabine's friends and neighbors noticed that her injuries were growing increasingly severe as the days passed, and they eventually called the authorities, who arrested Pego. While awaiting trial, Pego made several intimidating phone calls to Osawabine and wrote threatening letters to her, all of which were intercepted by law enforcement.

The grand jury returned a six-count superseding indictment charging Pego with: (1) unlawful imprisonment, in violation of Mich. Comp. Laws § 750.349b, as assimilated by 18 U.S.C. § 13; (2) assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. §§ 113(a)(3) and 1153; (3) assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6), 1151, and 1153; (4) witness tampering occurring over the three-day period in which the assaults were occurring, in violation of 18 U.S.C. § 1512(b)(3); (5) domestic assault by an habitual offender, in violation of 18 U.S.C. § 117; and (6) a second witness tampering charge relating to Pego's communications to Osawabine after his arrest.

After a trial at which Osawabine testified that Pego had assaulted her over the pertinent three-day period, the jury found Pego guilty on all counts. The presentence report ("PSR") prepared in Pego's case grouped Counts One through Five together, assessed several sentencing enhancements, and concluded that Pego had a combined adjusted offense level of 38. Pego's seventeen criminal history points gave him a criminal history category of VI, resulting in an advisory Guidelines sentencing range of 360 months to the statutory maximum of 1,020 months.

Pego raised no objections to any of the PSR's sentencing computations. The district court, after hearing allocution from Pego, remarked that Pego had "one of the highest numbers of

criminal history points that I've had a chance to witness," despite the fact that the calculation did not even include several tribal court convictions. The district court also heard a victim impact statement from Osawabine. Finally, noting that Pego persisted in denying that he had assaulted Osawabine and that Pego "simply cannot psychologically bring himself to the point of accepting responsibility for his own behavior," the district court stated its view that Pego's offense "was one of the more violent and disrespectful acts" that it had yet encountered and that his "twenty prior misdemeanor convictions, seven felony convictions and six tribal court convictions" militated in favor of "a significant sentence."

Ultimately, the district court sentenced Pego to the statutory maximum terms applicable to all six counts of conviction and ran the sentences for the first five counts consecutive to each other. The result was a 780-month sentence, with 240 months concurrent on Count Six. Pego appeals.

## II.

### A.

Pego first argues that the district court erred in denying his motion for a new attorney. Generally, a criminal defendant is entitled "to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). But "the right to counsel of choice is circumscribed in several important respects." *Id.* (internal quotation marks omitted). At the most basic level, a defendant that wants to substitute counsel must bring his desire to the attention of the district court. *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008); *United States v. Iles*, 906 F.2d 1122, 1131 (6th Cir. 1990). The district court then "must determine whether there is good cause for the substitution by balancing 'the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.'" *Benitez*, 521 F.3d at 632 (quoting

*United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996)). We review the district court's denial of a motion to substitute counsel for an abuse of discretion, considering "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice." *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

Here, despite Pego's insistence to the contrary, the district court's denial of his motion was not an abuse of discretion. Pego did not make his motion until the midst of jury selection, at which point he accused his trial counsel of having insufficiently prepared for trial. The district court inquired into Pego's assertions and then asked for a response from Pego's counsel. Trial counsel represented that he had followed most of the evidentiary leads to which Pego had directed him and that much of the resulting material was irrelevant or inadmissible. Further, claimed Pego's counsel, he had attempted to contact the witnesses that Pego had identified but had ascertained that their testimony would not be favorable to Pego. Having heard from both Pego and his counsel, the district court ruled that trial counsel had adequately investigated the case and was exercising his professional judgment in Pego's interest. The district court denied Pego's request that he be able to hire his own attorney, noting that his request came in the middle of jury voir dire.

Pego now claims that the district court improperly trivialized the extent of the rift between him and his counsel, which Pego claims exhibited itself in a total lack of contact during the two weeks immediately before his trial. But this fortnight of silence does not on its own demonstrate an irretrievable breakdown of communication. Trial counsel represented Pego at his

arraignment and plea hearing only two weeks before his trial began. The district court heard testimony that trial counsel investigated Pego's case in the interim and was receptive to Pego's desires about how to approach the case. And despite the alleged failure of his attorney to contact him during the final few days before trial, Pego did not request a new attorney until jury selection was underway. Because the record discloses neither a timely motion nor an irretrievable breakdown of attorney-client relations, the district court's denial of Pego's motion to substitute counsel was not an abuse of its discretion.

B.

Next, Pego claims that his trial counsel was ineffective in a myriad of ways. But ineffective assistance claims are generally not reviewed on direct appeal "except in rare cases where the error is apparent from the existing record." *United States v. Wells*, 623 F.3d 332, 348 (6th Cir. 2010) (citation omitted). And despite Pego's assertions, the record is far from clear that any of the alleged oversights and failings of his counsel were anything other than the product of a reasoned trial strategy or that they worked Pego prejudice. *See Strickland v. Washington*, 466 U.S. 668, 689, 693 (1984).

Pego claims, for example, that counsel should have challenged the warrantless search of his residence. But at least one officer testified that Osawabine voluntarily permitted the officers to enter, and there is also some suggestion in the record that a search warrant was in any event procured by the investigating officers. Nor is it apparent that, without the lone piece of evidence that the officers procured from the residence—a knife that Pego had held while trapping Osawabine in an upstairs bedroom—the prosecution would have been unable to convict him. Simply put, this is not the "rare" case in which it is appropriate for us to rule on an ineffective-

assistance-of-counsel claim without deferring to the more complete factual record that can be developed in a collateral proceeding. *Wells*, 623 F.3d at 348.

The same analysis applies to counsel's failure to move to strike expert testimony about the conduct of domestic abuse victims and the testimony of a medical doctor recounting Osawabine's identification of Pego as her assailant while she was being given medical assistance. It is not clear that Pego is correct in characterizing the challenged testimony as admissible, and in any event, given the other trial testimony that pointedly identified Pego as the perpetrator, it is far from apparent that counsel's conduct in this regard worked Pego any constitutionally cognizable harm.

It would be equally improper for us to rush to judgment on counsel's decision not to pursue a voluntary intoxication defense to the specific intent crimes charged in Counts Two and Four of the indictment. As his colloquy with the district court on his motion to substitute counsel illustrated, Pego wished to defend the case by claiming that he was not actually the assailant. For his counsel to have pursued the affirmative defense of voluntary intoxication, counsel would have had to gamble that he could muster enough evidence to prove the affirmative defense, overriding his client's stated position while doing so. Again, this is anything but the rare case where the record conclusively establishes trial counsel's ineffectiveness, and we decline Pego's invitation to hold otherwise. *Wells*, 623 F.3d at 348.

C.

Without citing any cases, Pego next contends that the district court violated his due process rights by abandoning its role as a neutral magistrate and instructing the jury with a biased version of the evidence. But the challenged portion of the district court's charge to the jury is a verbatim quotation of Sixth Circuit Criminal Pattern Jury Instruction 7.14, albeit with the

specifics of the relevant testimony inserted in the appropriate blanks, as the pattern instruction contemplates. The district court fairly represented the relevant trial testimony. Pego's argument is entirely without merit.

D.

Pego also asserts that he was sentenced in an impermissibly duplicative manner. According to Pego, he was improperly sentenced twice for the same conduct because his conviction on Count Three—which charged him with assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6)—was essentially a lesser-included offense of his conviction on Count Five, which charged him with domestic assault by a habitual offender, in violation of 18 U.S.C. § 117(a). He is incorrect.

Because Pego never raised any such argument in the district court, his current assertions are reviewed for plain error. *United States v. Kakos*, 483 F.3d 441, 445 (6th Cir. 2007). Pego's position rests on the principle that a sentencing court may not impose "greater punishment than the legislature intended." *Rutledge v. United States*, 517 U.S. 292, 297 (1996) (citation omitted). The federal presumption is that "where two statutory provisions proscribe the 'same offense,' a legislature does not intend to impose two punishments for that offense." *Id.* (internal quotation marks omitted). Determining whether two different statutes define two different offenses requires the court to examine the elements of each statutory provision. If "'each provision requires proof of a fact which the other does not,'" then the statutes define two different offenses instead of only one, and a defendant may be separately punished for each offense. *Id.* (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

Pego's assertion that his conviction under § 113(a)(6) is subsumed by his conviction under § 117(a) is based on a misreading of the statutes. A conviction under § 113(a)(6) requires

a defendant to commit (1) an assault (2) on federal territory (3) resulting in "serious bodily injury." *See* 18 U.S.C. § 113(a)(6); *United States v. Littlewind*, 595 F.3d 876, 884 (8th Cir. 2010). "Serious bodily injury" means bodily injury involving "(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." 18 U.S.C. §§ 113(b)(2), 1365(h)(3).

Section 117(a), by contrast, provides for a ten-year sentence if a defendant (1) with at least two prior domestic abuse convictions (2) commits a "domestic assault" (3) on federal territory (4) that results in "substantial bodily injury." *See* 18 U.S.C. § 117(a); *United States v. Cavanaugh*, 643 F.3d 592, 593 (8th Cir. 2011). "Substantial bodily injury" encompasses a degree of bodily injury that is less severe than "serious bodily injury," given that it includes bodily injury involving "(A) a temporary but substantial disfigurement; or (B) a temporary but substantial loss or impairment of the function of any bodily member, organ, or mental faculty." 18 U.S.C. § 113(b)(1).

As is evident from the relevant statutory text, Pego's conviction on Count Three required evidence of a more serious degree of bodily injury than his conviction on Count Five did. And his conviction on Count Five required evidence of a domestic assault and at least two prior domestic abuse convictions, which his conviction on Count Three did not. Because each conviction required proof of an element that the other did not, Pego is not entitled to a presumption that Congress intended for only one punishment to apply to his two offenses. *See Rutledge*, 517 U.S. at 297. Because Pego has failed to demonstrate plain error, we decline his request to vacate his sentence on Count Three on these grounds.

E.

Pego next contends that the district court engaged in impermissible double-counting when computing applicable sentencing enhancements under the Guidelines. Again, our review is for plain error, and, again, we do not agree with Pego that the district court plainly erred.

Impermissible double counting "occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways, but not where the defendant is punished for distinct aspects of his conduct." *United States v. Morgan*, 687 F.3d 688, 695 (6th Cir. 2012) (internal quotation marks omitted). Pego contends that he was impermissibly punished twice for the same conduct when (1) several specific offense enhancements increased his Guidelines range, after which (2) the district court sentenced him to the statutory maximum on all charges, several of which had served as the basis of the specific Guidelines enhancements.

But Pego misapprehends the function of the district court's Guidelines analysis, which does not punish him twice for a single aspect of his conduct. *Id.* The calculation of the advisory Guidelines range simply gave rise to a presumptively reasonable sentencing range—in this case, one with a floor of 360 months and a ceiling at the statutory maximum of 1,020 months. *See United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc). The district court's selection of a sentence that fell within the presumptively reasonable range is independent of its calculation of that advisory range. *See Jenkins v. United States*, 394 F.3d 407, 411–12 (6th Cir. 2005). The mere fact that the Guidelines range is determined by reference to grouped offense conduct obviously does not bar the district court from imposing sentences on each count of conviction, *see id.*, and the district court's decision to structure Pego's within-Guidelines sentence as a mix of consecutive and concurrent sentences on the substantive counts of conviction raises none of the specters of double punishment that underpins the bar against

double-counting. *See, e.g.*, U.S.S.G. § 5G1.2(d) (noting that where the adjusted offense level applicable to grouped counts exceeds the highest applicable statutory maximum on one of them, the sentencing court may apportion the rest of its chosen sentence as a consecutive sentence on the additional counts of conviction).

Nor has Pego identified any double-counting error in the Guidelines calculations giving rise to the advisory sentencing range, including the assessment of multiple sentencing enhancements. The PSR's calculations began with Pego's conviction on Count One, which charged him under 18 U.S.C. § 13, the Assimilative Crimes Act. The Act's basic function is to "borrow[] state law to fill gaps in the federal criminal law that applies on federal enclaves" in order to ensure that individuals cannot commit state-law crimes on federal territory with impunity merely because they are beyond a state's jurisdictional reach. *Lewis v. United States*, 523 U.S. 155, 160 (1998). Under the Act, if there is no federal criminal law on point, and if a defendant's conduct would have been a state-law crime but for the fact that it was committed on federal territory, it "becomes a federal offense for which [he is] sentenced under federal guidelines." *United States v. Couch*, 65 F.3d 542, 543 (6th Cir. 1995). *See also* 18 U.S.C. § 3551(a) (noting that a defendant who has been found guilty under 18 U.S.C. § 13 "shall be sentenced in accordance with the provisions of this chapter").

Count One charged Pego with unlawful imprisonment in violation of Mich. Comp. Laws § 750.349b as assimilated by 18 U.S.C. § 13(a). Pego does not argue that the Michigan statute was not assimilated, *see Lewis*, 523 U.S. at 159–66, nor does he dispute that the federal kidnapping guideline—U.S.S.G. § 2A4.1—is the "most analogous" guideline and was properly applied to his conduct. *See* U.S.S.G. § 1B1.2(a) (directing a sentencing court to the "most analogous guideline"); U.S.S.G. § 2X5.1, bkgd. cmt.; *United States v. Gibson*, 409 F.3d 325, 339

(6th Cir. 2005) (noting that "the district court's choice of an analogy should be upheld if it is reasonable"). *But see United States v. Epley*, 52 F.3d 571, 582 (6th Cir. 1995) (noting that U.S.S.G. § 2A4.1 might not apply where the state law analogues applying to the defendant are punished "far less" severely than the federal crimes sentenced under § 2A4.1).

The federal kidnapping guideline established a base offense level of 32 on Pego's conviction on Count One. *See* U.S.S.G. § 2A4.1(a). The PSR grouped Counts One through Five under U.S.S.G. § 3D1.2(c) and (d) because they involved a common victim and criminal scheme and because Counts Two through Five involved conduct that the Guidelines treated as enhancements to the offense level for Count One. Pego does not challenge this grouping decision.

As specific sentencing enhancements to the 32-point base offense level applicable to the counts grouped with Count One, the PSR added two points because Osawabine sustained serious bodily injury, two points because Pego used a fireplace poker as a dangerous weapon, and two points because Pego obstructed justice by attempting to intimidate Osawabine into falsifying her testimony. *See* U.S.S.G. § 2A4.1(b)(2)(B), (b)(3); U.S.S.G. § 3C1.1. Because the adjusted offense level of 38 was so high, the lone remaining count that was not grouped with the others—Count Six—had no effect on the determination of the Guidelines range.

The application of each of these enhancements to the grouped counts was perfectly appropriate and does not implicate any impermissible double counting. *See, e.g.*, § 3C1.1, cmt. n.8 (explaining that the obstruction of justice enhancement applies to the grouped counts when a defendant is separately convicted of an obstruction offense). The Guidelines calculations gave rise to a wide Guidelines range, and the district court's decision to locate a sentence within that range based on the statutory maximums poses none of the duplicative sentencing risks upon

which the double-counting doctrine is predicated. *See Jenkins*, 394 F.3d at 411–12. Pego's arguments to the contrary are entirely without merit.

F.

Finally, Pego argues that the district court failed to support its chosen sentence with specific findings under 18 U.S.C. § 3553(a). But the district court explicitly recounted Pego's significant criminal history, the brutal nature of his conduct, and his lack of remorse or acceptance of responsibility. Each of these areas of comment indicates the district court's weighing of the pertinent statutory considerations. Pego's argument that the district court failed to invoke the § 3553(a) factors in selecting his sentence is, as a result, inconsistent with the record. *See also United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005) ("[T]his court has never required the ritual incantation of the [§ 3553(a)] factors to affirm a sentence." (internal quotation marks omitted)).

To the extent that Pego claims that his sentence is substantively unreasonable because the district court "fail[ed] to consider relevant sentencing factors," his argument must fail. *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010). Pego's sentence fell within a Guidelines range that he has failed to show was incorrectly calculated, and a sentence falling within a properly-calculated Guidelines range is presumptively reasonable. *Vonner*, 516 F.3d at 390. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall v. United States*, 552 U.S. 38, 51 (2007). Pego does not point to anything that overcomes the presumption of reasonableness accorded to his within-Guidelines sentence, and we therefore decline to disturb it.

III.

For these reasons, we affirm the judgment of the district court.