RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0252p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

    No. 09-5828

CALVIN R. MORGAN,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 3:09-cr-3-1—Danny C. Reeves, District Judge.

Argued: May 30, 2012

Decided and Filed:  August 7, 2012

Before:  MARTIN, GILMAN, and WHITE, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Loren L. AliKhan, O'MELVENY & MYERS LLP, Washington, D.C., for Appellant.  Erin M. Roth, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.  **ON BRIEF:** Loren L. AliKhan, O'MELVENY & MYERS LLP, Washington, D.C., for Appellant.  Erin M. Roth, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge.  Calvin R. Morgan pleaded guilty to four charges arising out of his possession of marijuana and the discharge of a firearm during the execution of a search warrant at his apartment.  He was sentenced to a total of 201 months' imprisonment.

1

Morgan contends on appeal that the district court erred in enhancing his sentence due to an improper cross-reference under the United States Sentencing Guidelines to attempted murder and by impermissibly double counting his act of discharging the firearm. For the reasons set forth below, we **VACATE** the sentence imposed by the district court and **REMAND** the case for resentencing consistent with this opinion.

## I. BACKGROUND

### A.      Factual background

One evening in November 2008, several officers with the Shelbyville, Kentucky Police Department executed a search warrant at the apartment that Morgan shared with his wife Beverly. Morgan and Beverly were in the bedroom at the back of the apartment with two other individuals when the officers arrived, and there was evidence that they had been smoking crack cocaine. Earlier in the day, Beverly had received an unsettling call from a drug dealer who threatened to kill Morgan because he was a competitor in the distribution of marijuana. A friend of Morgan's had been similarly threatened just a few weeks earlier, and the friend accidentally shot and killed his attacker, so Morgan considered the threat credible.

When the officers arrived at the Morgans' apartment, they banged on the door and announced their presence. None of the four individuals in the bedroom claimed to have heard the knocking or the police officers' announcement, so they did not open the door. When no one responded to the officers' knock-and-announce procedure, one of the officers kicked in the front door and entered immediately into the combined kitchen-and-living-room area. As the officers streamed in, they continued to announce their presence loudly. Detective Jerry Warman and Officer Brent Bridgman proceeded directly across the small living space to a short hallway on the far side of the room that led to the bedroom, covering a total distance of less than 20 feet.

The hallway ended in an open doorway that led into a bedroom. From the hallway, the officers could see only a closet straight ahead of them, with the rest of the bedroom skewed to the left. The officers could not see inside the remainder of the room

as they headed down the hallway.  They continued to loudly announce their presence.  As they reached the end of the hallway, two shots were fired from the bedroom.  Both bullets lodged in the wall about twelve to fourteen inches from Detective Warman's head, and debris from the shots hit Officer Bridgman in the head.  The officers ordered the bedroom's occupants to drop their weapons.

Beverly then realized—for the first time, according to her testimony at Morgan's sentencing hearing—that the intruders were police officers, and she so informed her husband.  She admitted that she had heard the crash of the apartment door being broken down, but had believed that the intruders were rival drug dealers arriving to harm her husband.  Beverly also claimed that she did not hear the announcement "Police!" until after the gun was discharged, nor did she see anyone in the hallway at the time that the shots were fired.  Upon hearing Beverly's statement, Morgan immediately pushed the gun in between the bed's mattress and box spring and dropped to the floor on his stomach with his hands behind his head.

The officers arrested Morgan, who informed them that he had intended to fire only warning shots to scare off those whom he thought were rival drug dealers.  Morgan later admitted that he had been aware of a similar situation involving a friend who had intended to fire only warning shots from the bedroom, but the shots accidentally killed the intruder.  He also stated that he did not see the officers or hear their announcements until after his wife's admonishment, and that he was not aware that the officers were so close to the bedroom doorway.  The Morgans' guests, on the other hand, informed the police officers that they had heard the announcements shortly before the gun was discharged.

**B.     Procedural background**

In February 2006, Morgan was indicted on the following five counts:  possessing marijuana with the intent to distribute the drug, in violation of 18 U.S.C. § 841(a)(1) (Count One, "the marijuana-possession count");  using, carrying, and discharging a firearm, in violation of 18 U.S.C. § 924(c)(1) (Count Two, "the § 924(c) conviction");  possessing a firearm by an unlawful user of a controlled substance, in violation of 18

U.S.C.§ 922(g)(3) (Count Three, "the prohibited-possession count"); and two forfeiture counts (Counts Four and Five).

Morgan pleaded guilty to the first four counts in April 2009.  Where, as here, the defendant discharges the firearm rather than merely possessing or brandishing it, § 924(c) establishes a ten-year mandatory minimum sentence.  The plea agreement noted the government's intention to seek a sentence above the ten-year mandatory-minimum sentence on the § 924(c) conviction, as well as the application of the attempted-murder Guideline as the substantive offense cross-reference pursuant to Guideline § 2K2.1(c)(1)(A) for Morgan's prohibited-possession conviction.  Morgan retained the right under the plea agreement to object to the application of the cross-reference.

The Presentence Report (PSR) recommended applying the attempted-murder Guideline to calculate Morgan's sentence on the prohibited-possession count.  Exercising his preserved right, Morgan objected to this recommendation and argued instead that the appropriate cross-reference should be to Guideline § 2A2.2(b)(2) for aggravated assault, based on his contention that he lacked the specific intent to commit murder.

At the sentencing hearing in July 2009, the district court heard testimony from Officer Bridgman and the Morgans.  The court considered whether the appropriate cross-reference for determining Morgan's sentence on the prohibited-possession conviction should be to the attempted-murder Guideline or to the aggravated-assault Guideline, a question that turned on whether Morgan had the specific intent to commit murder when he fired at the officers.  Evaluating the testimony presented, the court concluded that the Morgans were not credible.  Specifically, the court discredited their testimony that they had not heard the police officers' announcements prior to the gunshots, concluding that "I do believe that [Morgan] was aware that officers were in his residence prior to the time shots were fired."  The court also found that "[a] person attempting to scare or fire warning shots would not have [aimed at the level of the officers' heads]," and that Morgan "was certainly aware of the consequences of taking similar action that resulted in the death of another person, another circumstance."

Despite Morgan's drug use at the time of his arrest, the district court concluded that Morgan "certainly had the ability to form the intent to commit the offense of attempt to murder." The court, however, did not make a finding that Morgan in fact had the specific intent to kill. Nevertheless, the court concluded that Morgan's actions fell within the definition of attempted murder because he knew that officers were "coming down the hallway at the time he fired the shots." The court therefore overruled Morgan's objection to the application of the attempted-murder Guideline.

To calculate Morgan's recommended Guidelines range on the prohibited-possession count, the district court began with Guideline § 2K2.1 for firearms offenses. Subsection § 2K2.1(c)(1)(A) includes the cross-reference provision in question. This provision instructs that if the defendant uses or possesses a firearm in connection with the commission or attempted commission of another crime, then the court should calculate the defendant's base offense level under § 2X1.1—which in turn directs the court to consider the Guideline for the most analogous substantive offense. At this point, the court applied the attempted-murder Guideline in § 2A2.1 to establish a base offense level of 27 for the prohibited-possession conviction. The multiple-count adjustment under § 3D1.4 of the Guidelines instructs that the higher base offense level of 27 be applied to both the prohibited-possession count and the marijuana-possession count. After doing so, the court applied a three-level reduction for acceptance of responsibility to reach a base offense level of 24 on these counts.

On the § 924(c) conviction, the government sought an upward departure of 24 months on the ground that Morgan's alleged warning shots aimed at the level of a person's head were more serious than warning shots fired into the air, the latter circumstance typically resulting in a ten-year mandatory-minimum prison sentence. The government presented two arguments in favor of the upward departure: first, that Morgan's conduct in aiming at the level of the officers' heads was more serious than a standard warning shot; and second, that in so firing, Morgan subjected every individual in the bedroom to potential harm from returned fire by the police officers.

In response to the government's request, the district court asked whether Morgan's conduct was "incorporated in part, though, into the guideline calculation? We've just gone through this analysis of whether the guidelines should be enhanced because of attempted murder versus an assault issue. . . . And doesn't that in part take into account that aggravated conduct of the defendant?" The government responded by explaining that it sought an upward departure on the § 924(c) conviction because this count was separate from the rest of the indictment. As a result, the government did "not believe that [the attempted-murder] crossover takes [any modifications of the § 924(c) conviction] into account." Morgan's counsel replied that increasing Morgan's sentence on the § 924(c) count, after already doing so on the prohibited-possession count "because of the way it went down . . . [,] seems to me to be beating a dead horse."

Ultimately, after considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the district court determined that the government's request was "well thought out and well taken," and that "a 24-month enhancement on the mandatory minimum would be the appropriate enhancement based upon the facts that are presented here." The court then sentenced Morgan to concurrent 57-month terms of imprisonment on the marijuana-possession and prohibited-possession convictions, to be served consecutively with a 144-month term of imprisonment on the § 924(c) conviction, for a total of 201 months of imprisonment. Concurrent supervised release terms of three years and five years, respectively, were also imposed.

At the conclusion of the sentencing hearing, the district court advised the parties of their obligations under *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), to state any objections to the sentencing proceedings that were not previously raised in order to preserve their arguments for appeal. The government did not lodge any objections. But counsel for Morgan stated: "[A]s we've previously noted in our objection to the PSR, we continue with our objection to the application of the aggravated assaults [sic]. . . . And additionally our objection to a sentence under . . . the discharge of a firearm, which is 924(c)[,] in excess of the mandatory minimum." The court noted Morgan's right, preserved in the plea agreement, "to appeal his sentence if the sentence

imposed is greater than 12 years of imprisonment, and it is in this case, and so he does reserve his right to appeal for those reasons."

Morgan's timely appeal followed.  He raises the following arguments on appeal: (1) the district court impermissibly double counted Morgan's conduct in discharging the firearm, for which a ten-year mandatory minimum sentence was imposed under § 924(c)(1)(A)(iii), by both applying the cross-reference to attempted murder in § 2K2.1(c)(1)(A) of the Guidelines and imposing a 24-month upward departure on Morgan's sentence under the § 924(c) conviction; (2) the district court's application of the attempted-murder Guideline to Morgan's sentence under the prohibited-possession count was erroneous because of his lack of intent to kill; and (3) the application of the attempted-murder Guideline is erroneous as a matter of law because the Guidelines do not permit the use of a cross-reference where the gun-related conduct is already accounted for in the other charges.

## II.  ANALYSIS

### A.     Standard of review

The first issue that we must address is the appropriate standard of review to apply to Morgan's appellate challenges.  Sentences in criminal cases are reviewed for both procedural and substantive reasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007).  Morgan's arguments challenge only the procedural reasonableness of his sentence. *See United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (explaining that "[d]ouble-counting claims concern the procedural reasonableness of the defendant's sentence"). *But cf. id.* at 474 (treating the question of whether the district court correctly imposed an upward departure as a substantive issue).  "Procedural reasonableness requires that a district court must properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence—including an explanation for any variance from the guidelines range." *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (internal quotation marks omitted).

To be procedurally reasonable, the court's sentence must also be based on a reasonable determination of the facts. *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010).

Our sentencing review is generally conducted under the deferential abuse-of-discretion standard. *United States v. Novales*, 589 F.3d 310, 314 (6th Cir. 2009). Under this standard, "[t]he district court's legal interpretation[s] of the Guidelines are reviewed de novo, but its factual findings will not be set aside unless they are clearly erroneous." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011).

But "if a sentencing judge asks . . . whether there are any objections not previously raised, in compliance with . . . *Bostic*, 371 F.3d 865[,] and if the relevant party does not object, then plain-error review applies on appeal" to those procedural-reasonableness arguments that were not previously raised in the district court. *United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008) (quoting *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc)) (alterations omitted); *see also United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009) (noting that "the defendant generally forfeits the right to challenge on appeal any procedural errors to which he did not object at the time of sentencing"). *But see United States v. Simmons*, 587 F.3d 348, 355 (6th Cir. 2009) (concluding that a defendant is not obligated to reraise issues previously presented to the court). In determining whether a defendant has preserved or waived his appellate challenges, we employ this forfeiture rule as "a common-sense application of the plain error doctrine" and "with an eye to the realities of the facts and circumstances of each sentencing proceeding." *Herrera-Zuniga*, 571 F.3d at 580 (internal quotation marks omitted).

Prior to the sentencing hearing, Morgan filed an objection to the PSR in which he argued against the application of the attempted-murder sentencing Guideline in favor of the lower Guideline for aggravated assault. Morgan raised this same concern prior to the district court's decision on this issue, as well as in response to the *Bostic* question at the close of the hearing. Because this issue has been properly preserved for our review, we will apply the abuse-of-discretion standard.

In response to the *Bostic* question, defense counsel also stated: "And additionally our objection to a sentence under . . . the discharge of a firearm [count], which is 924(c)[,] in excess of the mandatory minimum." The government argues that this statement was insufficient to preserve the double-counting challenge that Morgan now raises on appeal with respect to the upward departure. But we need not decide whether Morgan's response was sufficient because the district court itself raised and addressed this issue during the course of the sentencing proceedings. *See Simmons*, 587 F.3d at 356 (explaining that the "justification for the *Bostic* question is to ensure the district court has an opportunity to correct any error 'on the spot'").

Specifically, when the government requested an upward departure on the § 924(c) conviction (notably the same issue to which Morgan's counsel later objected in response to the *Bostic* question), the district court asked: "Isn't that incorporated in part, though, into the guideline calculation? We've just gone through this analysis of whether the guidelines should be enhanced because of attempted murder versus an assault issue." The government ultimately allayed the court's concerns by explaining its position that the court would not be double-counting Morgan's conduct because the two counts were separate. Defense counsel commented in response that applying the upward departure in addition to the cross-reference to attempted murder "seems to me to be beating a dead horse." Nonetheless, the court granted the government's request, finding it to be "well thought out and well taken."

The record therefore reflects that the district court directly considered and ruled on the double-counting issue that Morgan now raises. *See Simmons*, 587 F.3d at 356. Because the court raised this issue on its own, forcing Morgan to reraise it in response to the *Bostic* question would serve no purpose under the circumstances. We will therefore apply the abuse-of-discretion standard—rather than the plain-error standard—to Morgan's double-counting argument as it relates to the upward departure because the district court had the opportunity to consider this issue in the first instance.

Finally, Morgan raises a challenge to the application of any firearm-related cross-reference as a matter of law because he contends that his firearm-related conduct was

already taken into account in the § 924(c) charge. The government asserts on appeal that Morgan failed to object on this ground before the district court, but Morgan contends that he is presenting the issue as an alternative argument under his challenge to the application of the attempted-murder cross-reference. Because we conclude that Morgan has presented sufficient grounds in his first two challenges to justify a remand, we need not address the issues raised in his third challenge, and we therefore decline to do so. If the issue recurs on remand, Morgan may raise it then in the context of the specific cross-reference, if any, that the district court determines to be appropriate and in a manner consistent with this opinion.

**B.     Double counting**

"Double counting occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways," but not where the defendant is punished for distinct aspects of his conduct. *Battaglia*, 624 F.3d at 351 (alteration and internal quotation marks omitted). Although the sentencing court may "consider[] the details of the crime in the context of both the [underlying crime] and the § 924(c) violation," the court may not enhance the underlying crime where the defendant is also convicted of a § 924(c) violation. *United States v. Stewart*, 628 F.3d 246, 258 (6th Cir. 2010); *see also United States v. Hazelwood*, 398 F.3d 792, 800 (6th Cir. 2005) ("[E]nhancements stemming from the 'possession, brandishing, use, or discharge' of a firearm related to the underlying offense cannot be imposed for acts related to the conduct for which a defendant was also convicted under 18 U.S.C. [§] 924(c)."). "The Court's focus is on whether there is a separation of time or distinction in conduct[] between the two offenses in question." *United States v. Duckro*, 466 F.3d 438, 445 (6th Cir. 2006) (ellipsis and internal quotation marks omitted).

We must first determine whether the district court considered the same aspect of Morgan's gun-related conduct more than once in imposing his sentence. If the court did so, we must then consider whether the specific double counting that occurred in his sentence was impermissible, thus rendering his sentence procedurally unreasonable. *See United States v. Farrow*, 198 F.3d 179, 194-95 (6th Cir. 2000). Permissible double

counting occurs "where it appears that Congress or the Sentencing Commission intended to attach multiple penalties to the same conduct." *Id.* at 194.

Morgan argues that the district court's sentence was procedurally unreasonable because the court impermissibly double counted his conduct in discharging the gun by both applying the cross-reference to the attempted-murder Guideline and imposing an upward departure of 24 months on his sentence for the § 924(c) conviction, when this conduct was already punished through the ten-year mandatory minimum sentence on the § 924(c) count. Because the terms of imprisonment for both counts must run consecutively, Morgan contends that his overall sentence was increased three times based upon the same conduct.

The government, in contrast, argues that the district court did not impermissibly double count Morgan's conduct because the cross-reference to the attempted-murder Guideline addressed a different aspect of Morgan's conduct than did the ten-year mandatory minimum sentence required by § 924(c) or the upward departure relating to the § 924(c) conviction. Specifically, the government argues that the cross-reference addressed "Morgan's intent when discharging the firearm," whereas the mandatory minimum addressed only the discharge of the firearm itself and the upward departure accounted for the potential harm to which Morgan subjected multiple individuals because of the gunfire.

As noted above, in granting the government's request for an upward departure, the district court relied on the government's "well thought out and well taken" request. The government in turn relied primarily on the fact that Morgan's gun was aimed at the level of the officers' heads rather than up toward the ceiling in the manner of a typical warning shot. But the government also mentioned the potential harm to which Morgan had subjected his guests. The court focused on the former argument when it questioned whether an upward departure would double count this conduct, and the government never again mentioned the potential for harm to multiple individuals. But this latter argument remains in the record, and there is no way to tell whether the district court relied solely on the potential-harm argument (which seems unlikely, given its focus on

the direction-of-firing argument in its questioning) or on a combination of the two arguments, because the district court simply adopted the government's recommendation without making any such distinction.

Where a district court errs in calculating a defendant's sentencing range, we must remand for resentencing "unless we are certain that any such error was harmless—*i.e.*[,] any such error did not affect the district court's selection of the sentence imposed." *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (internal quotation marks omitted). Here, the district court appears to have relied at least in part on the direction-in-which-the-gun-was-pointing factor to increase Morgan's sentence under § 924(c). Such reliance constitutes impermissible double counting because this conduct was also accounted for in the attempted-murder cross-reference. We are thus unable to apply a presumption that the district court acted properly by considering only the harm-to-multiple-individuals argument. This case must therefore be remanded for resentencing.

## C.      Application of the attempted-murder Guideline

With respect to Morgan's second challenge to his sentence, we review the district court's factual findings supporting the attempted-murder Guideline under the clear-error standard of review. *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). At the sentencing hearing, the district court determined that Morgan would not have fired at the level of the officers' heads if he had intended to fire only a warning shot, and that Morgan "certainly had the ability to form the intent to commit the offense of attempt to murder." The court then concluded as follows:

> He should have known, and I believe he did know that police were in the hallway, coming down the hallway at the time he fired the shots, and that under the circumstances, I do believe that it would fall within the definition contained in Title 18, section 1111, an attempt to commit murder that would call for the cross-reference to that particular section.

Morgan faults the district court for finding that he was "able to form the intent before getting the gun," without finding that he actually formed such an intent. This challenge accurately highlights a deficiency in the sentencing record: the district court's

finding that Morgan "had the ability to form the intent" to kill is not the equivalent of finding that he actually formed that intent. *See United States v. Turner*, 436 F. App'x 631, 631 (6th Cir. Oct. 27, 2011) (considering a challenge to the application of a cross-reference to second-degree murder at sentencing and stating that "[u]nder federal law, a defendant cannot be guilty of attempted murder without a specific intent to kill" (citing *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991)). Because the facts as presented do not inevitably lead to a finding of the specific intent to kill and because this finding is essential to the application of the attempted-murder cross-reference, we remand this issue to the district court for reconsideration.

## III.  CONCLUSION

For all of the reasons set forth above, we **VACATE** the sentence imposed by the district court and **REMAND** the case for resentencing consistent with this opinion.