NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0083n.06

No. 15-1461

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 08, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| TIMOTHY DANIELS, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: BOGGS, WHITE, and DONALD, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Timothy Daniels pleaded guilty to possession of a weapon in a federal court facility, 18 U.S.C. § 930(e)(1), criminal contempt of court, 18 U.S.C. § 401(3), and obstruction of justice, 18 U.S.C. § 1503. The district court sentenced Daniels to 120 months' imprisonment, forty-two months above the United States Sentencing Guidelines' advisory range. Daniels appeals, arguing that his sentence is procedurally unreasonable. Because the district court did not address the departure or the reasons for it at sentencing, we **VACATE** Daniels' sentence and **REMAND** for resentencing.

**I.**

On March 3, 2014, while on federal supervised release and state parole, Daniels entered a federal courthouse in Detroit with two steak knives that were not detected by the courthouse security screening. Daniels then went to see his probation officer, without an appointment, and spoke to her about a recent encounter with police because he was absent from his halfway house for a period of time. He also provided a urine sample, which tested negative for any substances.

After this meeting, Daniels went to the United States Marshal's office, where he handed the window clerk his probation officer's business card, and said he had come to the courthouse to kill his probation officer and a judge whose name was written on the back of the business card. The Chief Deputy and Assistant Chief Deputy Marshal then escorted Daniels to a conference room where they asked how he intended to kill his probation officer and the judge. Daniels "replied, 'With this' and removed from his jacket pocket two old, wooden handled steak knives with four inch serrated blades." (PSR ¶ 11.) Daniels "was quickly disarmed without resistance." (*Id.*)

During the interview that followed, Daniels told the Marshals he had been incarcerated most of his life and "things were not going well" following his February 2014 release from prison. (*Id.*) Consequently, he had planned to kill his probation officer and the judge so he could return to prison "for the rest of his life." (*Id.*; *see also* Plea Questionnaire, PID 44 ("I am going to ask the Court to sentence me to life.").) He also told the Marshals "[h]e did not follow through on his plan as, after meeting with his probation officer, he felt she did not deserve to die." (PSR ¶ 11.) Daniels stated that if released, he would commit another crime to return to prison.

Daniels pleaded guilty without a plea agreement to possession of a weapon in a federal court facility, criminal contempt of court, and obstruction of justice.

In its presentence investigation report (PSR), the probation office detailed Daniels' criminal history, including convictions of assault, armed robbery, possession of weapons, and parole violations. Daniels stated that he had committed some of the crimes in order to return to custody, and in some instances so he could receive mental-health treatment. Following a May 2014 psychological evaluation, a doctor concluded that Daniels "show[ed] little compunction

about doing whatever it takes to get sent back to prison" and that "real violence cannot be ruled out if he ever determines that is what he needs to do to be returned to prison." (*Id.* ¶ 54.)

The PSR also detailed Daniels' personal background, including a history of physical and sexual abuse by his mother and her boyfriends, and his mental-health issues, including diagnoses of "Anti-Social Personality Disorder, Schizoaffective Disorder, Dependent Personality Disorder, Depressed Disorder, Borderline Intellectual Functioning, and one in 1993, for psychosis." (*Id.* ¶¶ 44, 51.) Daniels also had episodes of depression dating back to age five and reported attempting suicide on four occasions.

Based on a total offense level of twenty-two[1] and a criminal-history category of IV, the PSR calculated an advisory Guidelines range of sixty-three to seventy-eight months. Since Daniels had an undischarged prison term that was the result of a parole violation, the PSR recommended his sentence run consecutive to his undischarged term pursuant to the Sentencing Guidelines. The PSR noted that an upward departure might be warranted if the district court were to find that Daniels' criminal-history category "substantially underrepresents the seriousness of his criminal history or the likelihood he will commit further crimes," because due to the length of his most recent incarceration, most of his criminal convictions did not receive criminal-history points. (*Id.* ¶ 77.) It also noted a downward departure might be warranted because Daniels cooperated with authorities and confessed to an offense that otherwise may not

---

[1] The PSR scored Daniels' base offense level as fourteen with an eight-level enhancement pursuant to U.S.S.G. § 2J1.2(b)(1)(B) for threatening "physical harm to his probation officer with the intent to obstruct the administration of justice by influencing his supervised release status, for the purpose of returning to prison," (PSR ¶ 17), and a three-level enhancement under U.S.S.G. § 3A1.2(a) because the victim was a government officer and the offense was motivated by such status; the PSR also recommended a two-level reduction for acceptance of responsibility and a one-level reduction for assisting authorities in the prosecution of his misconduct, resulting in a total offense level of twenty-two. (*Id.* ¶¶ 16–25.)

have been discovered. As additional sentencing considerations, the PSR mentioned, 1) Daniels' childhood trauma and need for mental-health services, 2) that Daniels had repeatedly expressed a desire to return to prison and a willingness to commit crimes to "ensure that end," 3) that Daniels had committed similar crimes in the past for the same purpose, and 4) due to his consistent involvement with weapons and his "vow to commit more crimes in the future," protection of the public could warrant sentencing Daniels to a term of life imprisonment. (*Id.* ¶¶ 81–86.)

In its sentencing memorandum, the government requested a life sentence—the maximum term for Daniels' criminal contempt of court conviction—based on the seriousness of Daniels' offenses, deterrence, and protection of the public. In a sealed sentencing memorandum, Daniels requested a within-Guidelines sentence, noting that he had not intended to harm anyone and had not done so even though he had the opportunity, and that he voluntarily disclosed his possession of the knives to the Marshals. Daniels' memorandum also emphasized the traumatic circumstances of his childhood and his history of suffering physical abuse and mental-health problems; that he had begun to repair his relationship with his family; and that since taking his medications regularly, his outlook on life and desire for a life sentence had changed. The memorandum also noted that Daniels had developed a plan to support himself once released from prison. Daniels argued that due to his age—sixty-one—and the fact that he faced further imprisonment for violating the conditions of his supervised release and parole, a within-Guidelines sentence was warranted.

At sentencing, defense counsel reiterated these arguments and spoke extensively about Daniels' history of mental illness and the physical and sexual abuse he suffered as a child. She also highlighted that the nature of the crime was not severe—that is, Daniels had an opportunity to harm his probation officer but did not and voluntarily surrendered himself to the Marshals.

Defense counsel also noted that with respect to two prior convictions, Daniels had been prosecuted for the same conduct in federal and in state court, leading to a higher scoring of his Guidelines range. Defense counsel further argued that due to his upcoming incarceration, Daniels would receive medication regularly and therefore would be more stable upon his release. She suggested any concerns about deterring future misconduct could be handled with a full term of supervised release and enrolling Daniels in a reentry program. Defense counsel also stated she had discussed with Daniels that if he wanted to return to prison after his release, he would call her and his probation officer, rather than commit a crime and endanger others. Daniels then addressed the court, stating that although he had committed crimes in the past in order to go back to prison and get medication, he now had assistance from his family, including his two sisters.

At the hearing, the government abandoned its request for a life sentence, but asked the court to sentence Daniels to twice the high end of the Guidelines range in order to deter him from future misconduct and to protect the public. The government argued that although Daniels had not physically injured anyone, he had intended to cause harm. The government then noted that Daniels had a long criminal history, his offenses had escalated, and the PSR included testimony from doctors that he might follow through with one of his threats in order to get sent back to prison. The government argued that the only way to prevent Daniels from committing another crime and protect the public was to impose a lengthy prison sentence.

The court then stated:

I have, of course, reviewed your file, Mr. Daniels, and the presentence . . . report. I find the facts set out in the presentence report and used in the calculation of the offense level and the criminal history category are accurate and the calculation of the sentencing guideline range is accurate.

The argument made on your behalf by Miss Price is not simply eloquent and in so many ways persuasive as it is often when she argues to this Court. It's hard, as the Government has said, to quarrel with many of the substantive bases she has

called the Court's attention to, assuming that nobody is arguing about the fact that you had a lot of reasons throughout your life to behave in ways that you have behaved, including in criminal ways.

That isn't really the job of the Court to figure if somebody comes here, having pleaded guilty to crimes, to decide what it was that might have happened or might not have happened in that person's life that would have forced the person or at least motivated the person to become criminally involved. If that were all that people in this position who get appointed to be federal district judges or state judges had to do, we'd have to spend a whole lot more time in one kind of professional -- one kind of a professional educational situation than we do and we still wouldn't know what to do.

I don't disagree that there isn't much we can do that has any hope of changing criminal behavior by sending people to prison. I think that's been obvious from -- pretty much from the beginning and more and more is being written about it, and to the extent that I have had the benefit of reading any of that, it's simply emphasized to me the fact that there was no quick, easy answer, maybe no answer at all, present -- in the present -- in our present legal system for dealing with this. Should there be? Of course there should be, but there also should be a reaction from the people who are here to enforce the criminal laws of the United States in this case, a reaction that must be at least mindful of the law and mindful of the parts of the law which are somewhat helpful in making a decision with regard to how emphatically extreme or how harsh or how -- leave those words out, how strong the Court's reaction should be to the extent that it has the power to react.

I've certainly taken into consideration everything Miss Price has had to say and everything the Government has had to say and I have consulted with Miss Collins as the assigned probation officer before I came into the courtroom. I can't find an easy way to come to a conclusion with regard to the quantum of what I have to do here today, but having said that:

Pursuant to the Sentencing Reform Act of 1984 and considering the guidelines and factors contained in 18 U.S.C. 3553(a), I hereby commit the Defendant to the custody of the Bureau of Prisons for a term of 24 months on Count 1; 120 months on Count 2; and 120 months on Count 3, all these to run concurrently.

(PID 103–05.)

The court recommended that Daniels be sent to an institution with mental-health services and sentenced Daniels to a one-year term of supervised release on each count, to run concurrently. The court also imposed special conditions of supervised release, including drug testing, mental-health counseling if necessary, and psychiatric evaluation, admonished Daniels to

take any prescribed medication, and recommended the reentry program defense counsel had requested.

After apprising Daniels of his right to appeal, the court then stated, "I want to say a word or two, but at this point, let me turn to the Government, what further would the Government like the record to reflect." (PID 107.) When the government responded, "Nothing, your Honor," the court then asked, "Miss Price, what would you like the record to reflect?" (*Id.*) Defense counsel stated, "I would just object to the upward departure as not being justified within the factors." (*Id.*) The district court noted the objection, but did not address it further.

Two days after the sentencing hearing, the court issued the required, non-public statement of reasons for imposing a sentence outside the Guidelines. The court checked boxes indicating that it imposed an above-Guidelines sentence due to the nature and circumstances of the offense and history and characteristics of the defendant, and to protect the public. The district court explained the sentence as follows:

> The defendant's mental health condition is given serious consideration; however, the extent, repetitiveness and violent nature of his criminal history, even with the restrictions of supervision, demonstrates that he is a danger in the community. A sentence above the guideline range is warranted to protect the public from further crimes.

(R. 8-2 at 3.)

## II.

We review sentences for procedural and substantive reasonableness. *United States v. Freeman*, 640 F.3d 180, 185 (6th Cir. 2011); *see also Gall v. United States*, 552 U.S. 38, 51 (2007). Daniels challenges only the procedural reasonableness of his sentence. Ordinarily, we apply the abuse-of-discretion standard to a defendant's claim that his sentence is procedurally unreasonable. *Freeman*, 640 F.3d at 185. However, if the district court asks the parties

"whether there are any objections not previously raised, in compliance with the procedural rule set forth in *United States v. Bostic,* 371 F.3d 865 (6th Cir.2004)[,] and if the relevant party does not object," we apply plain-error review to the procedural claims not raised in the district court. *Freeman*, 640 F.3d at 186 (quoting *United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008)).

The parties dispute the applicable standard of review. Daniels contends that we should review for abuse of discretion because the district court did not ask whether the parties had any objections to the sentence announced, pursuant to *Bostic*. Although it need not use exact language, "[a] district court can satisfy the requirements of the *Bostic* rule only by clearly asking for objections to the sentence that have not been previously raised." *United States v. Clark*, 469 F.3d 568, 570 (6th Cir. 2006). Here, the district court asked the parties what further they would like the record to reflect. We have repeatedly held such language does not comply with the *Bostic* requirement. *See, e.g.*, *United States v. Camacho-Arellano*, 614 F.3d 244, 246–47 (6th Cir. 2010) (applying abuse-of-discretion standard to procedural-reasonableness challenge where court asked defense counsel only "is there anything else that you need me to address?"); *United States v. Gapinski*, 561 F.3d 467, 473–74 (6th Cir. 2009) (finding "Anything else for the record, Ms. Lasker?" did "not trigger plain-error review"); *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (holding that "Do you have anything further for the record, Mr. Canady?" did not satisfy *Bostic* requirement).

The government urges us to review Daniels' claims for plain error because defense counsel raised a new objection when asked by the court if she would like the record to reflect anything, demonstrating that she "recognized the opportunity for what it was" and had a meaningful opportunity to object, thereby satisfying the purpose of the *Bostic* requirement. (Gov. Br. 17.) Citing *United States v. Herrera-Zuniga*, 571 F.3d 568 (6th Cir. 2009), the

government argues the *Bostic* requirement was meant to "serve practical ends," and therefore "it would be inappropriate to construe [its] requirements as [a] formal and inflexible protocol[]." (Gov. Br. 16 (quoting *Herrera-Zuniga*, 771 F.3d at 580).) However, even assuming that counsel's response to the district court's question raised a new objection, *Herrera-Zuniga* is inapposite. At issue in *Herrera-Zuniga* was not whether the court asked a proper *Bostic* question, but rather whether counsel had forfeited certain procedural claims by not objecting to those errors in the district court. *See Herrera-Zuniga*, 571 F.3d at 578–80. Thus, although the court in *Herrera-Zuniga* noted that the *Bostic* "rule was adopted entirely for practical reasons," *id.* at 580, it invoked these practical considerations in holding that defense counsel had not forfeited certain procedural claims on appeal where there was "lingering confusion in this circuit as to whether such claims are 'procedural' or 'substantive' challenges," *id.* at 579, not in assessing whether the court had given the parties a meaningful opportunity to object.

Additionally, although "we employ [the] forfeiture rule as 'a common-sense application of the plain error doctrine' and 'with an eye to the realities of the facts and circumstances of each sentencing proceeding,'" *United States v. Morgan*, 687 F.3d 688, 694 (6th Cir. 2012) (quoting *Herrera-Zuniga,* 571 F.3d at 580), the practical considerations underlying the *Bostic* rule counsel against applying plain-error review in this case. This court adopted the *Bostic* rule in part "[d]ue to the difficulty of parsing a transcript to determine whether during a sentencing hearing . . . a party had a meaningful opportunity to object." *Bostic*, 371 F.3d at 872 n.6; *see also United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc) (stating the *Bostic* rule was adopted to bring clarity to the "opportunity-to-object" inquiry after "we wrestled with the difficulty of 'parsing a [sentencing] transcript to determine whether . . . a party had a meaningful opportunity to object'") (quoting *Bostic*, 371 F.3d at 873 n.6). Consequently, one goal of the

rule "is to help the court of appeals ascertain whether a party had an opportunity to make additional objections," and "[t]his end is served by asking the question, no matter what the party answers." *United States v. Simmons*, 587 F.3d 348, 356 (6th Cir. 2009) (citation omitted). Thus, even in a situation where the parties may have had an opportunity to object when the district court asked after imposing defendant's sentence if counsel "want[ed] to renew [his] previously-raised objections for the record," we held that the court had not satisfied its obligation to give "the parties a final opportunity to raise *new* objections," and reviewed for abuse of discretion. *Freeman*, 640 F.3d at 186.

Here, despite the government's contention that defense counsel raised a new objection in response to the district court's question, her response suggests she was merely reiterating her prior substantive argument that the § 3553(a) factors did not justify a sentence outside the Guidelines range. And her response can even be understood as challenging whether the court gave an adequate justification for its departure supported by the § 3553 factors. This ambiguity highlights why district courts must ask the *Bostic* question to make clear they are inviting both procedural objections and new substantive objections. We therefore review the procedural reasonableness of Daniels' sentence for abuse of discretion.

**III.**

For a sentence to be procedurally reasonable, "we must ensure that the district court: (1) properly calculated the applicable advisory Guidelines range; (2) considered the other [18 U.S.C.] § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range." *United States v.*

*Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). Daniels contends his sentence is procedurally unreasonable because the district court did not consider—and indeed did not believe it needed to consider—certain § 3553(a) factors, and because the district court failed to state in open court its reasons for imposing an above-Guidelines sentence.

## A.

When sentencing a defendant, the district court "'must make an individualized assessment based on the facts presented' and upon a thorough consideration of all of the § 3553(a) factors." *Id.* at 580 (quoting *Gall*, 552 U.S. at 50). The district court commits procedural error where it fails to set forth a statement of reasons sufficient to satisfy the appellate court that it has considered the parties' arguments and has a reasoned basis for imposing a particular sentence. *Id.*; *see also Rita v. United States*, 551 U.S. 338, 356 (2007). The court need not "make specific findings related to each of the factors considered." *Bolds*, 511 F.3d at 580 (quoting *United States v. McClellan*, 164 F.3d 308, 310 (6th Cir. 1999)). However, "when 'a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it.'" *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007) (quoting *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006)); *see also Simmons*, 587 F.3d at 360 ("A sentencing judge must explicitly consider factors that are raised by the defendant or that are otherwise especially relevant to the case at bar.")

Daniels contends that the district court failed to consider his history and characteristics and the nature of the offense pursuant to § 3553(a)(1). Further, he argues the district court's statement that it "isn't really the job of the Court to figure if somebody comes here, having pleaded guilty to crimes, to decide what it was that might have happened or might not have

happened in that person's life that would have forced the person or at least motivated the person to become criminally involved," demonstrates it ignored his history and characteristics and believed it did not need to consider them. (Daniels Br. 15.) We disagree.

When read in its full context, the district court's statement does not demonstrate that it ignored Daniels' history and characteristics or that it believed these factors were not relevant. Rather, the court explained that in taking a defendant's history and characteristics into account, a court is not expected to decide which particular events in a defendant's life caused or led to the defendant's criminal behavior. This is different from a failure or refusal to consider a defendant's history or circumstances; it is simply an acknowledgement that even mental-health professionals often find it difficult to pinpoint exactly why a person acts a certain way. Additionally, before making the statement, the court indicated it had listened to and considered Daniels' arguments about his personal history, stating, "It's hard, as the Government has said, to quarrel with many of the substantive bases [defense counsel] has called the Court's attention to, . . . about the fact that you had a lot of reasons throughout your life to behave in ways that you have behaved, including in criminal ways." (PID 103.) The court also recommended a reentry program, ordered mental-health treatment, and recommended Daniels be sent to the federal medical facility at Rochester, as defense counsel specifically requested, further demonstrating that it considered counsel's arguments about Daniels' history and characteristics. The district court additionally noted that its sentence should reflect an appropriate response to Daniels' violation of criminal laws, suggesting that it disagreed with defense counsel's argument that the crime was not that serious. Although the court might have said more, the record does not reflect that the district court ignored or even failed to consider Daniels' history and characteristics or the nature of the offense.

**B.**

Daniels next argues that his sentence is procedurally unreasonable because the district court failed to state at the sentencing hearing a specific reason for imposing of an above-Guidelines sentence. When a district court imposes a sentence outside the Guidelines range, it must state in open court the "specific reason" for the sentence, and must separately articulate its reasons "with specificity" in a written statement pursuant to 28 U.S.C. § 994(w)(1)(B).[2] 18 U.S.C. § 3553(c)(2). For the sentence to be procedurally reasonable, the district court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall,* 552 U.S. at 50. "We have held accordingly that a sentence is procedurally unreasonable when the district court 'fail[s] to provide its specific reasons for an upward departure or variance.'" *Johnson*, 640 F.3d at 206 (quoting *United States v. Blackie*, 548 F.3d 395, 401 (6th Cir. 2008)). However, above-Guidelines sentences are not presumptively unreasonable and although we "may consider the extent of the deviation, [we] must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51.

Although district courts have discretion to determine "how much explanation is necessary" in imposing a sentence, especially when that sentence falls within the advisory Guidelines range, *see United States v. Madden*, 515 F.3d 601, 610 (6th Cir. 2008), in the present case, the district court offered no reason at the sentencing hearing for its decision to impose an

---

[2] Although the district court did not specify at the sentencing hearing whether the sentence was a departure from the Guidelines or a variance, our review is the same for both. *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (citing *United States v. Vowell,* 516 F.3d 503, 510 (6th Cir. 2008)). And, to the extent Daniels argues this was error, "we have not required that district courts carefully distinguish between whether the decision to deviate from the advisory Guidelines range is based on a departure or variance." *Herrera-Zuniga*, 571 F.3d at 586.

above-Guidelines sentence. Indeed, after finding the Guidelines calculation in the PSR accurate, the district court did not acknowledge that it was imposing an above-Guidelines sentence. The district court's explanation that it would not take into account *only* defendant's background and that the court needed to "react" to the crime do not explain the need to impose a sentence forty-two months above the Guidelines range. *Cf. United States v. Cousins*, 469 F.3d 572, 578 (6th Cir. 2006) (finding sentence procedurally unreasonable where, among other errors, "the district judge failed to provide his reasoning for the variance or to explain how the two months that he added to the maximum Guidelines sentence were related to his stated goal of protecting the public, which might as easily be invoked to justify a variance of one day or ten years"), *abrogated on other grounds by Irizarry v. United States*, 553 U.S. 708 (2008). Further, although "the strength of the justification for a departure [need not] vary in proportion to the amount of deviation from the Guidelines," *see Bolds*, 511 F.3d at 581, "a major departure should be supported by a more significant justification than a minor one," *Gall*, 552 U.S. at 50. Here, the court imposed a sentence significantly above the Guidelines range and its statement at the sentencing hearing is insufficient to permit meaningful appellate review of that decision.

The district court later explained its reasons for imposing an above-Guidelines sentence in its written statement of reasons. Daniels does not argue that this explanation is insufficient; rather, he contends it cannot cure the inadequate explanation provided in open court because the statement of reasons is not public and because a district court may not correct an inadequate explanation with an "after-the-fact written justification for the sentence." (Daniels Br. 17.) The government concedes that a later written justification cannot be used to correct a defect in the court's explanation at the sentencing hearing, but argues that the oral explanation was sufficiently specific. (Gov. Br. 25.)

Section 3553(c)(2) requires a court to announce its specific reason for imposing an outside-Guidelines sentence in both open court *and* in a written statement of reasons. In *United States v. Blackie*, 548 F.3d 395 (6th Cir. 2008), where the district court did not refer to the Guidelines range or explain its reason for varying from that range either at the time of sentencing or in its written judgment, we held that "[t]he district court's failure to comply with the requirements of 18 U.S.C. § 3553(c)(2) constitutes error," *id.* at 401–02, observing that the § 3553(c) requirements "are more than mere administrative burdens or meaningless formalities, but rather assure that the court has properly calculated the applicable Guidelines range, and that adequate explanation is provided to allow for meaningful appellate review and the perception of a fair sentence," *id.* at 401. The court also stressed that "the treatment of a § 3553(c) violation as plain error will help maintain its requirements as mandatory, and not some formality that can be ignored without consequence." *Id.* at 403. Although the district court in *Blackie* had not sufficiently explained its outside-Guidelines sentence either in open court or in the written order, we find *Blackie*'s reasoning no less compelling here, as the statute plainly requires both.

Moreover, our precedents strongly suggest a subsequent written justification may not compensate for an inadequate explanation at sentencing. In *United States v. Grams*, 566 F.3d 683, 685–86 (6th Cir. 2009) (per curiam), we held that a written statement of reasons accepting the PSR's proposed Guidelines range did not cure the district court's failure to adopt that range in open court, even where "there seem[ed] to have been no disagreement among the parties as to the correctness of the PSR's suggested Guidelines range and findings of fact." Although the *Grams* court also found the written statement of reasons to be deficient, it specifically noted that the district court should "especially" state its reasoning in open court "when, as here, the district court sentences a defendant outside of the suggested range and provides further detail only in a

statement of reasons sealed from public disclosure." *Id.* at 686. Similarly, in *United States v. Dawe*, 362 F. App'x 436, 439 (6th Cir. 2010), we held the district court abused its discretion where it had not explained at the sentencing hearing its reasons for imposing a non-Guidelines sentence, even though "[t]he court's Sentencing Opinion listed [the reasons] in detail." And in the context of resentencing, we agreed with the Second Circuit's holding that "upon resentencing, providing only a written opinion violates the 'open court' requirement of § 3553(c)," and held that "upon general remand, after a sentence is vacated on direct appeal, the district court must state the reasons underlying its sentence 'in open court.'" *United States v. Garcia-Robles*, 640 F.3d 159, 166–67 (6th Cir. 2011).

In some cases, we have noted that an oral explanation at sentencing may "compensate for [a] scant written explanation," *see United States v. Zobel*, 696 F.3d 558, 567 (6th Cir. 2012) (applying plain-error review), and have been reluctant to invalidate a sentence for failure to provide an adequate written explanation alone, *see United States v. Jennings*, 407 F. App'x 20, 21 (6th Cir. 2011) (holding that inadequacy of district court's reasons for sentence in written order was harmless because court's oral sentence allowed for meaningful appellate review); *United States v. Poynter*, 344 F. App'x 171, 181 n.8 (6th Cir. 2009) ("While this court has emphasized the importance of § 3553(c)(2), it has not vacated a sentence *solely* for failure to meet the statute's written order requirement.").

However, pronouncing a sentence in open court serves purposes that cannot be satisfied by a written statement, and certainly not by a non-public one. The requirement that reasons for a sentence be given in open court "'ensures that a defendant at the time of sentencing will know the grounds for an upward departure' and is not satisfied by a 'belated attempt . . . to correct [a] failure to provide a specific statement at the sentencing hearing' in a subsequently issued

opinion." *Garcia-Robles*, 640 F.3d at 167 (quoting *Dawe*, 362 F. App'x at 439); *see also Gall*, 552 U.S. at 50 (stating that purpose of requirement that a court state its reasons for imposing a sentence is not only to allow for meaningful appellate review, but also "to promote the perception of fair sentencing"). In holding that where an oral and written sentence conflict, "the oral sentence controls," we have noted that "[t]he reason for the primacy of the oral sentence lies in the fact that '[a] defendant is present only when being sentenced from the bench,'" and "[b]ecause criminal punishment 'affects the most fundamental human rights[,] . . . sentencing should be conducted with the judge and defendant facing one another and not in secret.'" *Penson*, 526 F.3d at 334 (quoting *United States v. Villano*, 816 F.2d 1448, 1452 (10th Cir. 1987) (en banc)). Further, as we have observed several times, "[c]ompliance with § 3553(c) 'is important not only for the defendant, but also for the public to learn why the defendant received a particular sentence.'" *Garcia-Robles*, 640 F.3d at 167 (quoting *Blackie*, 548 F.3d at 403).

Here, the written statement of reasons is not public and therefore does nothing to promote the perception of fair sentencing, and was issued outside Daniels' presence, depriving him of an adequate chance to face the court. Thus, although there may be situations where a sufficient statement at a sentencing hearing may compensate for an inadequate written statement, the circumstances do not support applying the reverse justification here. Consequently, we must find the district court's failure to state in open court its reason for imposing an above-Guidelines sentence was procedurally unreasonable.

## IV.

For these reasons, we **VACATE** Daniels' sentence and **REMAND** for resentencing.