NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0489n.06

No. 18-3012

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| CHARLOTTE C. NEEL, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |

Before: MERRITT, COOK, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. In 2014, Charlotte Neel was sentenced to six months in prison for four probation violations. After being released, she was again brought before the district court in late 2017 to answer for four supervised release violations: (1) associating with a felon; (2) failing to report to her probation officer; (3) testing positive for cocaine; and (4) failing to pay restitution for her original 2009 fraud conviction. After Neel admitted the violations, the district court imposed an above-Guidelines sentence of two years in prison—the statutory maximum—with no supervised release to follow. Neel appeals, challenging the substantive reasonableness of her sentence. Having considered her argument, we AFFIRM.

I.

*Original Conviction.* In March 2008, Neel used her brother's name, Social Security number, and other personal information to open a credit card account and incur $19,000 in charges without his consent. On June 26, 2009, Neel pled guilty to one count of fraud in connection with

an access device in violation of 18 U.S.C. § 1029(a)(2). The district court sentenced Neel to three years of probation and ordered her to pay $17,914.28 in restitution as a condition of her probation.

*Multiple Probation Violations.* When she failed to pay the restitution amount during her probation period, the district court extended Neel's probation period twice, in September 2012 and April 2013. Things only went downhill from there. In April 2014, the probation officer filed a third report, this time alleging multiple new violations: (1) being convicted of possession of criminal tools and threatening telecommunications in February 2014; (2) failing to pay her outstanding restitution; (3) failing to notify her probation officer of her new criminal charges; and (4) traveling to Maryland without her probation officer's permission. Neel ultimately admitted the violations. At these hearings, it also came to light that she had been convicted of disorderly intoxication in August 2013 but, similarly, had failed to notify her probation officer of that conviction.

At the sentencing hearing, Neel asked that the court allow her to go to a treatment facility, stating that she had mental health and substance abuse issues. Her attorney presented what he described as an email[1] from an Alcoholics Anonymous sponsor, Ann Thomasen, in support of leniency for Neel. He claimed that Ann Thomasen—who had written glowingly about Neel's exemplary participation in AA—was traveling from Indianapolis to testify at Neel's probation violation hearing that day. The district court raised questions about the sponsor, based on the probation officer's concerns that Ms. Thomasen didn't actually exist.[2] When it became clear that

---

[1] At the original May 14, 2014 hearing, Neel's attorney had also attempted to present what he described as a letter from the claimed sponsor "explaining that [Neel] is sober."

[2] The probation officer had informed the district court that she "ha[d] received numerous phone calls from . . . so-called Ms. Thomasen," but that she "ha[d] never been able to get in contact with her." The probation officer also said that the caller who left voicemails as Ms. Thomasen "sound[ed] remarkably similar" to Neel.

the district court was determined to wait for Ms. Thomasen to appear in person, Neel revealed to her attorney—who had also been deceived up to this point—that Ms. Thomasen was "made up" and "a complete fraud."

Based on the four supervised release violations and Neel's "Ann Thomasen" charade, the government asked for a sentence at the higher end of the Guidelines range (three to nine months). The district court ultimately sentenced Neel to only six months' imprisonment, followed by three years of supervised release. The district court hoped that "perhaps after she serves some period of time in custody, . . . she will be fully motivated . . . , when she returns to supervised release, to obtain the help that she needs."

*Most Recent Violations.* That was, as it turned out, too optimistic. In August 2017, after Neel had served her six months' incarceration and been released, her probation officer filed a fourth violation report alleging four new supervised release violations: (1) associating with a felon; (2) failing to report to her probation officer; (3) failing a drug test; and (4) failing to pay restitution for her original 2009 fraud conviction. Since the probation officer had not been able to contact Neel and had no idea where she was, the district court issued a warrant for Neel's arrest on August 28, 2017. Neel was apprehended shortly thereafter and appeared before the court on November 15, 2017, where she waived her right to a hearing and admitted the four new violations. At Neel's request, the district court postponed sentencing for a month so that her attorney could explore possible substance abuse treatment options at an Akron facility called the Edna House.

Before the sentencing hearing, the probation officer filed a supplemental report revealing the circumstances surrounding Neel's involvement, or lack thereof, in the program at Edna House. The probation officer disclosed details from a conversation that occurred when she had called the Edna House to inquire about Neel. According to the probation officer, Edna House said that

Neel—who never actually enrolled in the program—would meet her family near the Edna House facility to make them believe she was receiving treatment there. At one point in October 2017, Neel even shared a birthday cake with her family in the Edna House courtyard, though she had never received treatment there.

At the sentencing hearing, Neel's attorney argued that she had been suffering from drug addiction and asked the court to consider placing her in the Edna House treatment program. Neel herself also acknowledged her "inability to follow the very simple rules of probation" and her unfortunate decline under supervised release. The government recommended that the court impose a sentence "at the higher end" of the three-to-nine month advisory Guidelines range, reasoning that the six months imposed by the court in 2014 "[o]bviously wasn't a wake-up call for [Neel] then, because she turned around and went right back to doing either the same thing or worse things after that."

After hearing from the parties and weighing the statutory goals of sentencing, the district court ordered twenty-four months' imprisonment, which was the statutory maximum and fifteen months above the advisory Guidelines range, with no supervised release to follow. The district court reviewed Neel's pattern and extensive history of violations, emphasizing that "despite every effort by the probation staff, instead of showing some improvement in behavior or in any way, shape or f[or]m modify her behavior, she has actually gone completely the other direction." The court highlighted Neel's unwillingness to obtain treatment, as well as her lack of credibility: "I wish I could believe you, Ms. Neel . . . . I don't think you want really want treatment. I don't think you want treatment at all. I don't think you want to be honest with yourself or honest with your family or honest with the court." When Neel's attorney objected to the above-Guidelines sentence, the court noted the objection but stated that the upward variance was necessary because

of Neel's history of deception, manipulation, and her repeated failure to take advantage of opportunities for improvement.

Neel timely appealed.

## II.

A criminal sentence must be both procedurally and substantively reasonable. *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012). Neel has challenged only the substantive reasonableness of her sentence. While an above-Guidelines sentence does not enjoy the same presumption of reasonableness accorded to a within-Guidelines sentence, *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008), we must still be "highly deferential" to the district court's sentencing decisions. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). "[A] major departure" from the Guidelines sentence "should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50.

To determine whether a sentence is substantively reasonable, we look at the sentence length and determine whether "the court placed too much weight on some of the [18 U.S.C.] § 3553(a) factors and too little on others." *Rayyan*, 885 F.3d at 442. "The point is not that the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural reasonableness." *Id.* We review claims of substantive unreasonableness for an abuse of discretion, although we review the district court's factual findings for clear error and its legal conclusions de novo. *Id.* at 440, 442.

## III.

Our review of the arguments and record before us indicate that the district court did not abuse its discretion. After hearing fully from Neel, the government, and the probation officer, the district court discussed the nature of the four new supervised release violations. The court noted

that police officers had found Neel in a car with a convicted felon, along with "drugs . . . , scales, pipes, [and a] silver spoon." "Although [the felon] claims that the items are all his," the court continued, "given Ms. Neel's history and her involvement with him, that claim is suspect, to say the least." As to Neel's failure to report to her probation officer, the district court noted that "[n]umerous attempts were made to contact the offender but to no avail." She tested positive for cocaine while on supervised release. And, of course, eight years after her original fraud conviction, Neel had yet to comply with the restitution order in full.

Given the many past attempts to give Neel second chances, the district court reasonably concluded that "any further supervision" would be "a waste of time." The court noted that Neel had been under court supervision for an unusually long period of time, and that "[s]he's been on supervision primarily because of her inability to follow the law and comply with the basic requirements of probation." Furthermore, the court noted that she had been given ample opportunities to seek help and treatment, and that she had "failed . . . miserably" in each case. The court specifically stated that it did not find her testimony, that she wanted to change her behavior and seek treatment, credible.

The district court reasonably determined that Neel's six-month sentence in 2014 had failed to get her attention. The court told her that "the six months that we gave you back in 2014 would have been a motivator, and it was hopefully designed to offer you some motivation when you came into the community to try to deal with your addiction and your other behaviors." Unfortunately, the court observed, "that's just not happened." Looking forward, the court believed a new sentence of nine months' imprisonment would not "serve any useful purpose." And, ultimately, the district court reasonably determined that the upward variance was necessary because of Neel's steady deterioration under supervision, as well as her history of deception.

Furthermore, considering the statutory sentencing factors, the district court determined that it would "need to remove [Neel] from society, unfortunately, clearly for the protection of society as a whole." The statutory maximum sentence, according to the court, "will insure that this defendant, again, will clearly not be a danger to the community, either financially or otherwise." Granting "due deference" to the district court's determination, *Gall*, 552 U.S. at 51, we find that this conclusion was reasonable in light of the sentencing factors and history the court considered.

We struggle to find support in the record for Neel's assertion that the "district court did not consider the alternative to a full 24-month revocation sentence as presented by counsel." The district court postponed the original hearing by one month to give Neel time to investigate the treatment alternative she would later request. At the hearing, Neel repeatedly stressed the "other issues taking place in her life, especially as it relate[s] to the substance abuse and some mental health issues," and "respectfully request[ed] that the court sentence her [to four to five weeks' incarceration], and then order [her] to complete the intensive inpatient treatment program at Edna House followed by whatever . . . period of supervision" the court "deem[ed] appropriate." The district court explicitly determined that it did not find Neel's expressed desire for rehabilitation to be credible, and Neel has presented no evidence on appeal to show that factual determination was clearly erroneous. *Rayyan*, 885 F.3d at 440, 442. Thus, in the context of our "highly deferential" review, *id.* at 442, we see no reason to conclude that the sentence was substantively unreasonable.

An exchange that took place after the district court pronounced its sentence illustrates this point. During sentencing, the district court judge told Neel (mistakenly) that he had delayed the sentencing hearing "to give you one last chance to really make a genuine effort to obtain some form of treatment," but observed "that has not occurred." After the sentence, Neel's attorney spoke up to correct the record, clarifying that the district court had granted the continuance not to give

Neel a chance to seek treatment—she was incarcerated between the hearings—but rather to give her attorney time to examine treatment options at Edna House. The court acknowledged the error and corrected the record, and then asked the probation officer several questions about Edna House. Neel's attorney added that Neel had been "in forced sobriety" in prison, and that Edna House was willing to "accept her after she filled out the application." The district court nevertheless stated that "I will take all that under consideration. It does not change my thought process with regard to the defendant." The court noted that when given the chance to improve, Neel had gone "right back to the [self-destructive] behaviors and back to the bad relationships." For these reasons, the court said, "I am sorry, I will accept what you said, but it isn't going to change my position." Without more, however, this dialogue doesn't show that the "district court did not consider the alternative to a full 24-month revocation sentence as presented by counsel," as Neel contends. Rather, giving the district court the "due deference" required, *Gall*, 552 U.S. at 51, this exchange demonstrates that the court gave Neel sufficient opportunity to make her case for treatment, and that she had simply failed to convince the court.

The length of the sentence accounted for the totality of circumstances surrounding Neel's violations and her broader history under supervision. The district court specifically stated that it "ha[d] carefully considered the matter" and "gone back and looked at the history of this case." As noted above, the record reflects that careful consideration. When, as in this case, "a district court considers the relevant § 3553(a) factors in-depth and reaches its determination that the appropriate sentence [falls] outside the advisory guidelines range," we are "very reluctant to find the sentence unreasonable." *United States v. Collington*, 461 F.3d 805, 811 (6th Cir. 2006).

Ultimately, Neel would have the district court put more weight on the goal of "provid[ing] the defendant with needed . . . medical care," and less weight on "the history and characteristics

of the defendant" and the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(C) & (D).  But we cannot say that the district court abused its discretion in its own weighing of the statutory sentencing factors.  *See United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006) (stating that a defendant's request "to balance the factors differently from the district court . . . is simply beyond the scope of . . . appellate review").  In short, given the factual circumstances of this case, nothing in the record indicates that Neel's sentence was substantively unreasonable.  Our appellate review is necessarily at an end.

* * *

We AFFIRM the judgment of the district court.